822 F.2d 1477
 56 USLW 2066
 William Thomas CARTWRIGHT, Petitioner-Appellant,
v.
Gary D. MAYNARD, Warden, Oklahoma State Penitentiary at
McAlester, Oklahoma, and Robert Henry, successor
to Michael C. Turpen, Attorney General
of Oklahoma, Respondents-Appellees.
 No. 86-1231.
 United States Court of Appeals,
Tenth Circuit.
 June 22, 1987.
 
 Mandy Welch, of Payne and Welch, Hugo, Okl., for petitioner-appellant.
 David W. Lee (Robert H. Henry, Atty. Gen., with him on briefs), Asst. Atty. Gen., Oklahoma City, Okl., for respondents-appellees.
 Before HOLLOWAY, Chief Judge, and BARRETT, MCKAY, LOGAN, SEYMOUR, MOORE, ANDERSON, TACHA and BALDOCK, Circuit Judges.
 ON REHEARING EN BANC
 TACHA, Circuit Judge.
 
 
 1
 Petitioner William Thomas Cartwright appeals from the denial of habeas corpus relief by the United States District Court for the Eastern District of Oklahoma. Cartwright was convicted of the murder of Hugh Riddle and sentenced to death following a determination that the murder satisfied two statutory aggravating circumstances and that these aggravating circumstances outweighed the mitigating evidence. Cartwright alleges that the state of Oklahoma applied the "especially heinous, atrocious, or cruel" aggravating circumstance in a unconstitutionally vague and overbroad manner in this case. We agree.
 
 
 2
 Cartwright was tried and convicted of first degree murder for the shooting of Hugh Riddle.[1] The state argued that three of the aggravating circumstances enumerated under Oklahoma law justified the imposition of the death penalty: first, the defendant knowingly created a great risk of death to more than one person; second, the murder was "especially heinous, atrocious, or cruel;" and third, the existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society. See Okla.Stat.Ann. tit. 21, Secs. 701.12(2), (4), (7) (West 1983). The jury concluded that the first two aggravating circumstances were established, but that the evidence did not support the third aggravating circumstance. The jury then weighed the aggravating circumstances and the mitigating circumstances and sentenced Cartwright to death for the murder of Hugh Riddle.
 
 
 3
 The Oklahoma Court of Criminal Appeals affirmed the convictions and the sentences on appeal. Cartwright v. State, 695 P.2d 548 (Okla.Crim.App.), cert. denied, 473 U.S. 911, 105 S.Ct. 3538, 87 L.Ed.2d 661 (1985). The state courts then denied Cartwright's application for post-conviction relief. Cartwright v. State, 708 P.2d 592 (Okla.Crim.App.1985), cert. denied, --- U.S. ----, 106 S.Ct. 837, 88 L.Ed.2d 808 (1986). The United States District Court for the Eastern District of Oklahoma denied Cartwright's petition for a writ of habeas corpus. A panel of this court affirmed the denial of the petition. Cartwright v. Maynard, 802 F.2d 1203 (10th Cir.1986). We granted rehearing en banc on the question of the application of the "especially heinous, atrocious, or cruel" aggravating circumstance.[2]
 
 
 4
 There are three questions presented in this appeal. First, we must decide whether reliance upon an unconstitutionally vague or overbroad statutory aggravating circumstance requires the reversal of a death sentence where the sentencer was required to balance the aggravating circumstances with the mitigating circumstances. Second, if such reliance requires that the death sentence be vacated, we must then decide whether the Oklahoma courts in this case applied a constitutionally adequate narrowing construction of "especially heinous, atrocious, or cruel" to the facts of this case. Finally, if the state courts failed to apply a proper narrowing construction, we must decide whether this court can apply a narrowing construction of "especially heinous, atrocious, or cruel" to the facts of this case.
 
 
 5
 For the reasons stated in this opinion, we conclude that: (1) reliance upon a constitutionally invalid aggravating circumstance requires that the death sentence be vacated; (2) the Oklahoma courts failed to apply a constitutionally adequate narrowing construction in this case; and (3) this court cannot decide what narrowing construction is to be applied by the state of Oklahoma. We therefore remand to the district court with directions to enter judgment in accord with this opinion.
 
 I.
 
 6
 Cartwright was sentenced to death after two statutory aggravating circumstances were established. If Cartwright's death sentence can rest on the unchallenged aggravating circumstance of creating a great risk of death to more than one person, we need not reach the constitutional challenge to the "especially heinous, atrocious, or cruel" aggravating circumstance. See, e.g., Superintendent, Massachusetts Correctional Inst. v. Hill, 472 U.S. 445, 450, 105 S.Ct. 2768, ---, 86 L.Ed.2d 356 (1985) (a federal court will address a constitutional question only when it is necessary to the resolution of the case before the court). Thus, we must first decide whether the unchallenged aggravating circumstance supports the death sentence even if the challenged aggravating circumstance were found to be invalid.
 
 
 7
 The validity of a death sentence based in part on consideration of an invalid aggravating circumstance "depends on the function of the jury's finding of an aggravating circumstance under [a state's] capital sentencing statute, and on the reasons that the aggravating circumstance at issue ... was found to be invalid." Zant v. Stephens, 462 U.S. 862, 864, 103 S.Ct. 2733, 2736, 77 L.Ed.2d 235 (1983); see also Barclay v. Florida, 463 U.S. 939, 951, 103 S.Ct. 3418, 3425, 77 L.Ed.2d 1134 (1983); accord Andrews v. Shulsen, 802 F.2d 1256, 1263 (10th Cir.1986). The Supreme Court has addressed this question under Georgia law in Zant and under Florida law in Barclay and Wainwright v. Goode, 464 U.S. 78, 104 S.Ct. 378, 78 L.Ed.2d 187 (1984). We are presented with the same question under the law of Oklahoma.
 
 
 8
 Under the Georgia statute reviewed in Zant, first degree murder is not necessarily a capital offense. The death penalty can be imposed for first degree murder only if at least one statutory aggravating circumstance is established. A statutory aggravating circumstance is used simply to cross the threshold dividing first degree murders that are not eligible for the death penalty and first degree murders that are eligible for the death penalty. It does not matter how many statutory aggravating circumstances are present--only one is needed to cross the threshold. Therefore, as long as one valid aggravating circumstance remains, the murder is a capital offense even if other aggravating circumstances are subsequently found invalid.
 
 
 9
 Moreover, an aggravating circumstance under the Georgia statute is used only to determine which first degree murders are capital offenses. An aggravating circumstance does not play the additional role of guiding the sentencer in the exercise of its statutory discretion in deciding whether to sentence a particular murderer to life imprisonment or to death. No particular aggravating circumstance is afforded special weight. There is no requirement that aggravating circumstances be balanced against mitigating circumstances. See Zant, 462 U.S. at 873-74, 103 S.Ct. at 2740-41.
 
 
 10
 The Zant Court held that two valid aggravating circumstances served the constitutionally required function of narrowing the class of persons eligible for the death penalty even though a third aggravating circumstance--that the defendant had "a substantial history of serious assaultive criminal convictions"--had been held unconstitutionally vague. Id. at 878-79, 103 S.Ct. at 2743-44. Once the class of persons eligible for the death penalty has been determined, "the Constitution does not require the jury to ignore other possible aggravating factors in the process of selecting, from among that class, those defendants who will actually be sentenced to death." Id. at 878, 103 S.Ct. at 2743 (footnote omitted). The Court then held that the evidence of the defendant's prior criminal record, while not a valid statutory aggravating circumstance, could be considered by the sentencer in selecting the proper punishment. Thus, although the defendant's prior criminal record was improperly considered as a statutory aggravating circumstance, the Court allowed the jury to consider such evidence in deciding whether to impose the death penalty. Labeling the evidence of a prior criminal record as a statutory aggravating circumstance "arguably might have caused the jury to give somewhat greater weight to respondent's prior criminal record than it otherwise would have given," but that possibility did not rise to the level of constitutional error. Id. at 888-89, 103 S.Ct. at 2749.
 
 
 11
 The purpose of an aggravating circumstance in the Oklahoma statute is decidedly different from the purpose of an aggravating circumstance in the Georgia statute considered in Zant. An aggravating circumstance under the Oklahoma scheme does not establish a threshold that distinguishes capital murders from other first degree murders. In Oklahoma any first degree murder is punishable by life imprisonment or death. Okla.Stat.Ann. tit. 21, Sec. 701.9 (West 1983). Therefore, the Oklahoma statute is unlike the statutes in those states in which aggravating circumstances are employed to narrow the class of first degree murderers that are eligible for the death penalty. See Zant, 462 U.S. at 875, 103 S.Ct. at 2741 (Georgia); Andrews, 802 F.2d at 1263 (Utah); Welcome v. Blackburn, 793 F.2d 672, 677 (5th Cir.1986) (Louisiana). Cf. Johnson v. Thigpen, 806 F.2d 1243, 1248 (5th Cir.1986), cert. denied, --- U.S. ----, 107 S.Ct. 1618, 94 L.Ed.2d 802 (1987) (Mississippi).
 
 
 12
 Oklahoma uses an aggravating circumstance to guide the discretion of the sentencer in determining whether the death penalty should be imposed for a particular murder. Okla.Stat.Ann. tit. 21, Sec. 701.10 (West 1983). The sentencer must balance all of the statutory aggravating circumstances with all of the mitigating circumstances. Okla.Stat.Ann. tit. 21, Sec. 701.11 (West 1983). Zant does not determine the effect of consideration of an unconstitutional statutory aggravating circumstance under the Oklahoma statute, for the Court in Zant carefully observed that it did "not express any opinion concerning the possible significance of a holding that a particular aggravating circumstance is 'invalid' under a statutory scheme in which the judge or jury is specifically instructed to weigh statutory aggravating and mitigating circumstances in exercising its discretion whether to impose the death penalty." 462 U.S. at 890, 103 S.Ct. at 2750; see also id. at 873-74 n. 12, 103 S.Ct. at 2741 n. 12.
 
 
 13
 Florida, like Oklahoma, uses an aggravating circumstance to guide the discretion of the sentencer rather than to define which first degree murders are capital offenses. In this respect the Oklahoma statute is similar to the Florida statute reviewed by the Supreme Court in Barclay and Goode. Nevertheless, this case differs from Barclay and Goode in two important respects. First, the Oklahoma courts do not reweigh the aggravating and mitigating circumstances after an aggravating circumstance has been found invalid. Second, this case involves an allegation that an aggravating circumstance is invalid under the federal constitution rather than state law.
 
 
 14
 In Barclay, the trial judge found several aggravating circumstances but no mitigating circumstances and sentenced the defendant to death. The State conceded before the Supreme Court that one of the aggravating circumstances relied upon by the state courts--Barclay's criminal record--was not a statutory aggravating circumstance under state law. Barclay, 463 U.S. at 946, 103 S.Ct. at 3422. In cases where no mitigating circumstances were found, the Florida courts had held that the effect of a sentencer's erroneous consideration of an improper aggravating circumstance would be determined by a harmless error analysis. Elledge v. State, 346 So.2d 998, 1002-03 (Fla.1977), cited in Barclay, 463 U.S. at 955, 966 n. 12, 103 S.Ct. at 3427 n. 12.
 
 
 15
 The Supreme Court held that this procedure satisfied the constitutional demand of "an individualized determination on the basis of the character of the individual and the circumstances of the crime." Barclay, 463 U.S. at 958, 103 S.Ct. at 3429 (plurality opinion of Rehnquist, J., with Burger, C.J., & White & O'Connor, JJ.); id. at 967, 103 S.Ct. at 3433 (Stevens, J., with Powell, J., concurring in the judgment) (quoting Zant, 462 U.S. at 879, 103 S.Ct. at 2744) (emphasis original). Justice Rehnquist wrote that because the aggravating circumstance was invalid only under state law,
 
 
 16
 [T]his case is distinguishable from Zant v. Stephens ... where one of the three aggravating circumstances found in Georgia state court was found to be invalid under the Federal Constitution. Of course, a " 'mere error of state law' is not a denial of due process." Thus we need not apply the type of federal harmless-error analysis that was necessary in Zant....
 
 
 17
 Id. at 951 n. 8, 103 S.Ct. at 3425 n. 8 (citations omitted). The plurality then noted that while state law prohibited a sentencer from considering nonstatutory aggravating circumstances, id. at 954, 103 S.Ct. at 3427, "nothing in the United States Constitution prohibited the trial court from considering Barclay's criminal record." Id. at 956, 103 S.Ct. at 3428; see also id. at 966-67, 103 S.Ct. at 3433-34 (Stevens, J., concurring in the judgment). The plurality concluded that consideration of an aggravating circumstance invalid under state law did not render the balancing unconstitutional because "[t]here is no reason why the Florida Supreme Court cannot examine the balance struck by the trial judge and decide that the elimination of improperly considered aggravating circumstances could not possibly affect the balance." Id. at 958, 103 S.Ct. at 3429. Justice Stevens agreed that one valid aggravating circumstance could constitutionally support a death sentence on appeal if no statutory mitigating circumstances had been found. Id. at 967-68, 103 S.Ct. at 3433-34.
 
 
 18
 In Goode, the Supreme Court again considered the application of the Florida statute. One aggravating circumstance had been found invalid under state law in Goode, as in Barclay, but mitigating circumstances were present in Goode, unlike Barclay. The Florida Supreme Court had indicated that it would perform a harmless error analysis only if there were no mitigating circumstances. See Barclay, 463 U.S. at 954-55, 103 S.Ct. at 3427. In Goode, on the other hand, the Florida Supreme Court independently rebalanced the valid aggravating circumstances with the mitigating circumstances. The United States Supreme Court recognized that "there is no claim that in conducting its independent reweighing of the aggravating and mitigating circumstances the Florida Supreme Court considered [an invalid aggravating circumstance]." Goode, 464 U.S. at 86-87, 104 S.Ct. at 383. Thus, the death sentence was constitutionally permissible.
 
 
 19
 Two of the elements relied upon in Barclay and Goode are absent in this case. First, unlike the Florida courts, the Oklahoma courts have been "unwilling to speculate as to the effect the improper aggravating circumstance ... had on the jury's recommendation to impose the death penalty." Johnson v. State, 665 P.2d 815, 827 (Okla.Crim.App.1983).[3] The Oklahoma Court of Criminal Appeals has held that if an aggravating circumstance used in the balancing by the sentencer is found invalid on appeal, the death penalty must be modified to life imprisonment. Id. The Oklahoma courts have refused to apply a harmless error analysis or to independently reweigh the aggravating and mitigating circumstances. Thus, Oklahoma has no provision for curing on appeal a sentencer's consideration of an invalid aggravating circumstance.
 
 
 20
 The Arkansas courts have also concluded that they "are not in a position to speculate about what the jury might have done if it had found only two aggravating circumstances instead of three." Williams v. State, 274 Ark. 9, 12, 621 S.W.2d 686, 687 (Ark.1981), cert. denied, 459 U.S. 1042, 103 S.Ct. 460, 74 L.Ed.2d 611 (1982), quoted in Collins v. Lockhart, 754 F.2d 258, 267 (8th Cir.), cert. denied, 474 U.S. 1013, 106 S.Ct. 546, 88 L.Ed.2d 475 (1985). In Collins, the Eighth Circuit held that one of the aggravating circumstances relied upon by the Arkansas courts in imposing a death sentence was unconstitutional. The court then considered the effect of this holding in light of the presence of other valid aggravating circumstances. After examining the statutes at issue in Zant and Barclay, the court concluded:
 
 
 21
 In Arkansas, the practice is decisively different. Here, unlike Georgia, weighing does take place.... Furthermore, unlike the practice in Florida, if an aggravating circumstance is held invalid for any reason, the Supreme Court of Arkansas does not engage in any sort of harmless-error analysis. The death penalty is automatically reduced to life imprisonment, unless the state chooses to retry the question of punishment to a second jury.
 
 
 22
 Collins, 754 F.2d at 267. The court then held that "[t]he reasoning underlying [Zant v.] Stephens and Barclay is therefore inapplicable here, and the presence of an invalid aggravating circumstance means that the sentence of death cannot stand." Id.
 
 
 23
 The second difference between this case and Barclay and Goode lies in the reason that an aggravating circumstance is invalid. The plurality in Barclay emphasized that the particular aggravating circumstance at issue was invalid under state law. Barclay, 463 U.S. at 951 n. 8, 103 S.Ct. at 3425 n. 8. See also Goode, 464 U.S. at 86, 104 S.Ct. at 383. Cartwright alleges that the "especially heinous, atrocious, or cruel" aggravating circumstance violates the federal constitution. We agree that "Zant and Barclay leave open the question of whether a sentencing authority that must weigh all statutory factors may consider constitutionally invalid aggravating circumstances." Special Project, Capital Punishment in 1984: Abandoning the Pursuit of Fairness and Consistency, 69 Cornell L.Rev. 1129, 1181 (1984).
 
 
 24
 The Supreme Court's decisions show that the particular function of an aggravating circumstance in a state's capital punishment system determines the effect of reliance upon an unconstitutional aggravating circumstance. An aggravating circumstance in Oklahoma plays a critical role in guiding the discretion of the sentencer who must decide whether a particular murder merits life imprisonment or death for the defendant. Further, the Oklahoma courts have declined to reconsider that decision on appeal when the sentencer improperly included an invalid aggravating circumstance in the balancing process.[4] In such a system, reliance upon an aggravating circumstance that is invalid under the federal constitution could affect the balance struck by the sentencer. The improper reliance is not corrected by the state appellate review process and is not a matter of state law beyond the review of a federal court in a habeas corpus proceeding. A death sentence that is imposed pursuant to a balancing that included consideration of an unconstitutional aggravating circumstance must be vacated under the Eighth and Fourteenth Amendments. We therefore must consider Cartwright's allegation that Oklahoma's application of the "especially heinous, atrocious, or cruel" aggravating circumstance in this case was unconstitutionally vague.
 
 II.
 
 25
 Death is qualitatively different from other punishments that can be imposed by the state. See, e.g., Ford v. Wainwright, 477 U.S. 399, 106 S.Ct. 2595, 2603, 91 L.Ed.2d 335 (1986); California v. Ramos, 463 U.S. 992, 998-99, 103 S.Ct. 3446, 3451-52, 77 L.Ed.2d 1171 (1983). This difference necessitates heightened scrutiny to assure that the capital sentencing decision does not violate the Eighth Amendment prohibition against cruel and unusual punishments. In a constitutional scheme borne of concern for restraining the effect of governmental action on personal life and liberty, the death sentence is the ultimate restraint. We are thus further charged with heightened responsibility for assuring that that restraint is exercised in strict conformity with the requirements of the Constitution. The Supreme Court has consistently demanded that "death penalty statutes be structured so as to prevent the penalty from being administered in an arbitrary and unpredictable fashion." California v. Brown, --- U.S. ----, 107 S.Ct. 837, 839, 93 L.Ed.2d 934 (1987). The Constitution requires us to engraft objective standards on a sentencing decision so vulnerable to subjective judgments. The difficulty of the task is reflected in the words of Justice Harlan:
 
 
 26
 To identify before the fact those characteristics of criminal homicides and their perpetrators which call for the death penalty, and to express these characteristics in language which can fairly be understood and applied by the sentencing authority, appear to be tasks which are beyond present human ability.
 
 
 27
 McGautha v. California, 402 U.S. 183, 204, 91 S.Ct. 1454, 1466, 28 L.Ed.2d 711 (1971).
 
 
 28
 We must scrutinize the Oklahoma statutory scheme to determine whether the state has met the constitutional challenge of defining circumstances and terms that deter arbitrary and unpredictable sentencing decisions and provide adequate justification for imposing the death penalty. The question before this court is whether the application of Oklahoma's "especially heinous, atrocious, or cruel" aggravating circumstance satisfied the requirements of the Constitution in this case. We begin our consideration by examining the constitutional requirement that the discretion of a sentencer in a capital case be carefully guided.
 
 A.
 
 29
 In Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), the Supreme Court effectively invalidated the capital punishment statutes of the thirty-nine states that provided absolute discretion to the sentencer in choosing the appropriate penalty in a capital case. The Court held that "the imposition and carrying out of the death penalty in these cases constitute cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments." Id. at 239-40, 92 S.Ct. at 2727. Three justices concluded that a procedure for imposing the death penalty cannot allow complete and unguided discretion to the sentencer in deciding whether a particular defendant should be sentenced to death or life imprisonment. Id. at 255-57, 92 S.Ct. at 2734-35 (Douglas, J., concurring); id. at 309-10, 92 S.Ct. at 2762-63 (Stewart, J., concurring); id. at 314, 92 S.Ct. at 2764 (White, J., concurring). The existing procedures for the imposition of capital punishment provided "no meaningful basis for distinguishing the few cases in which it is imposed from the many cases in which it is not." Id. at 313, 92 S.Ct. at 2764 (White, J., concurring).
 
 
 30
 Thirty-five states quickly enacted new statutes in an attempt to meet the constitutional demands. These statutes followed two different approaches. Some states sought to eliminate the arbitrary infliction of the death penalty by making the death penalty mandatory for all defendants convicted of first degree murder. Other states sought to channel the discretion of the sentencer by requiring separate guilt and sentencing proceedings, consideration of aggravating and mitigating circumstances, and appellate review of each death sentence.
 
 
 31
 The Supreme Court decided challenges to death sentences imposed under five of these statutes on July 2, 1976. The Court held that the death penalty is not cruel and unusual punishment per se. Gregg v. Georgia, 428 U.S. 153, 168-87, 96 S.Ct. 2909, 2922-31, 49 L.Ed.2d 859 (1976) (opinion of Stewart, Powell, and Stevens, JJ.); id. at 226, 96 S.Ct. at 2949 (White, J., concurring in the judgment) (citing Roberts v. Louisiana, 428 U.S. 325, 350-56, 96 S.Ct. 3001, 3013-16, 49 L.Ed.2d 974 (1976) (White, J., with Burger, C.J., Blackmun and Rehnquist, JJ., dissenting)). The Court further found that the Georgia "guided discretion" statute satisfied the Furman mandate "that where discretion is afforded a sentencing body on a matter so grave as the determination of whether a human life should be taken or spared, that discretion must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action." Gregg, 428 U.S. at 189, 96 S.Ct. at 2932 (opinion of Stewart, Powell, and Stevens, JJ.). The statute also "focus[ed] the jury's attention on the particularized nature of the crime and the particularized characteristics of the individual defendant." Id. at 206, 96 S.Ct. at 2940. See also Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976) (upholding the constitutionality of the Florida guided discretion statute); Jurek v. Texas, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976) (upholding the constitutionality of the Texas guided discretion statute). In contrast, the Court in Woodson v. North Carolina, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976), and Roberts v. Louisiana, 428 U.S. at 325, 96 S.Ct. at 3002, held that the mandatory death penalty statutes of North Carolina and Louisiana were invalid because they failed "to allow the particularized consideration of relevant aspects of the character and record of each convicted defendant before the imposition upon him of a sentence of death," and "simply papered over the problem of unguided and unchecked jury discretion." Woodson, 428 U.S. at 302-03, 96 S.Ct. at 2990 (opinion of Stewart, Powell, and Stevens, JJ.).
 
 As the Supreme Court recently explained:
 
 32
 [O]ur decisions since Furman have identified a constitutionally permissible range of discretion in imposing the death penalty. First, there is a required threshold below which the death penalty cannot be imposed. In this context, the State must establish rational criteria that narrow the decisionmaker's judgment as to whether the circumstances of a particular defendant's case meet the threshold. Moreover, a societal consensus that the death penalty is disproportionate to a particular offense prevents a State from imposing the death penalty for that offense. Second, States cannot limit the sentencer's consideration of any relevant circumstance that could cause it to decline to impose the penalty. In this respect, the State cannot channel the sentencer's discretion, but must allow it to consider any relevant information offered by the defendant.
 
 
 33
 McCleskey v. Kemp, --- U.S. ----, 107 S.Ct. 1756, 1774, 95 L.Ed.2d 262 (1987) (emphasis added).B.
 
 
 34
 An aggravating circumstance performs a crucial function in a capital punishment statute that endeavors to channel the discretion of the sentencer. "If a State has determined that death should be an available penalty for certain crimes, then it must administer that penalty in a way that can rationally distinguish between those individuals for whom death is an appropriate sanction and those for whom it is not." Spaziano v. Florida, 468 U.S. 447, 460, 104 S.Ct. 3154, 3161, 82 L.Ed.2d 340 (1984). An aggravating circumstance is a standard established by the legislature to guide the sentencer in choosing between life imprisonment and the death penalty. In essence, an aggravating circumstance is a legislative determination that "this murder is different." This difference "must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder." Zant, 462 U.S. at 877, 103 S.Ct. at 2742 (footnote omitted). A statutorily designated aggravating circumstance accomplishes this by "identify[ing] special indicia of blameworthiness or dangerousness in the killing." Weisberg, Deregulating Death, 1983 Sup.Ct.Rev. 305, 329 (1983). Thus, "the jury is given guidance regarding the factors about the crime and the defendant that the State, representing organized society, deems particularly relevant to the sentencing decision." Gregg, 428 U.S. at 192, 96 S.Ct. at 2934 (opinion of Stewart, Powell, and Stevens, JJ.).
 
 
 35
 The narrowing function of an aggravating circumstance demands that such a factor be capable of objective determination. Thus, aggravating circumstances must be described in terms that are commonly understood, interpreted and applied. To truly provide guidance to a sentencer who must distinguish between murders, an aggravating circumstance must direct the sentencer's attention to a particular aspect of a killing that justifies the death penalty. Many aggravating circumstances require distinctions among murders that are relatively easy for a sentencer to make: more than one person was killed by the acts of the defendant, Ky.Rev.Stat. Sec. 532.025(2)(a)(6) (Michie/Bobbs-Merrill Supp.1986); the victim was pregnant, Del.Code.Ann. tit. 11, Sec. 4209(e)(1)(p) (Supp.1986); or the murder was committed by a hidden explosive device. Cal. Penal Code Sec. 190.2(a)(4) (West Supp.1987).
 
 
 36
 The Supreme Court has warned, however, that a standard could be so vague that it would "fail adequately to channel the sentencing decision patterns of juries with the result that a pattern of arbitrary and capricious sentencing like that found unconstitutional in Furman could occur." Zant, 462 U.S. at 877, 103 S.Ct. at 2742 (quoting Gregg, 428 U.S. at 195 n. 46, 96 S.Ct. at 2935 n. 46). Thus, if "an aggravating circumstance is defined and applied so broadly that it conceivably could cover every first degree murder, then it obviously cannot fulfill its constitutional responsibilities to eliminate the consideration of impermissible factors and to provide a recognizable and meaningful standard for choosing the few who are to die." Rosen, The "Especially Heinous" Aggravating Circumstance in Capital Cases--The Standardless Standard, 64 N.C.L.Rev. 941, 954 (1986) [hereinafter The Standardless Standard ] (footnote omitted).
 
 C.
 
 37
 The Oklahoma capital punishment statute includes as an aggravating circumstance that "[t]he murder was especially heinous, atrocious, or cruel." Okla.Stat.Ann. tit. 21, Sec. 701.12(4) (West 1983). Twenty-three other states have a similar aggravating circumstance, using such terms as "outrageously or wantonly vile," "heinous," "horrible," "brutal," "depraved," "cruel," "inhuman," and "atrocious" to describe a particularly offensive crime. See Rosen, The Standardless Standard, 64 N.C.L.Rev. at 943 n. 7. Although the Supreme Court has not held such language to be facially unconstitutional, the Court has "not stopped at the face of a statute, but [has] probed the application of statutes to particular cases." McCleskey, 107 S.Ct. at 1773. A state court interpretation of the statutory language of an aggravating circumstance can be "so broad that it may have vitiated the role of the aggravating circumstance in guiding the sentencing jury's discretion." Id.
 
 
 38
 Cartwright alleges that Oklahoma's "especially heinous, atrocious, or cruel" aggravating circumstance was applied in an unconstitutionally vague and overbroad manner in this case. In deciding this claim, we first review the Supreme Court decisions involving challenges to statutory provisions similar to the "especially heinous, atrocious, or cruel" aggravating circumstance at issue in this case. We then turn to the evolution of the meaning of "especially heinous, atrocious, or cruel" as construed by the Oklahoma Court of Criminal Appeals. Finally, we determine whether that court's application of the aggravating circumstance in this case satisfies the demands of the United States Constitution.
 
 
 39
 The Supreme Court first considered challenges to this type of aggravating circumstance in Gregg and Proffitt. Although the murder in Gregg had not been found to satisfy the aggravating circumstance that the offense was "outrageously or wantonly vile, horrible, or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim," see Ga.Code Ann. Sec. 17-10-30(b)(7) (1982), the petitioner asserted that the alleged vagueness of that provision rendered the entire Georgia statutory sentencing procedure unconstitutional. The Supreme Court disagreed, recognizing that it is "arguable that any murder involves depravity of mind or an aggravated battery," but concluding that "this language need not be construed in this way, and there is no reason to assume that the Supreme Court of Georgia will adopt such an open-ended construction." Gregg, 428 U.S. at 201, 96 S.Ct. at 2938 (opinion of Stewart, Powell, and Stevens, JJ.) (footnote omitted). In Proffitt, the trial judge found that the murder was "especially heinous, atrocious, or cruel." See Fla.Stat.Ann. Sec. 921.141(5)(h) (West 1985). The Florida courts had construed that provision to apply only to "the conscienceless or pitiless crime which is unnecessarily torturous to the victim." State v. Dixon, 283 So.2d 1, 9 (Fla.1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974). The Supreme Court held that by so limiting the statutory description, the state provided adequate guidance to the sentencer. Proffitt, 428 U.S. at 255-56, 96 S.Ct. at 2968.
 
 
 40
 The Supreme Court reviewed the Georgia courts' application of the aggravating circumstance in Godfrey v. Georgia, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980). Justice Stewart observed:
 
 
 41
 [I]f a State wishes to authorize capital punishment it has a constitutional responsibility to tailor and apply its law in a manner that avoids the arbitrary and capricious infliction of the death penalty. It must channel the sentencer's discretion by "clear and objective standards" that provide "specific and detailed guidance," and that "make rationally reviewable the process for imposing a sentence of death."
 
 
 42
 Id. at 428, 100 S.Ct. at 1764 (plurality opinion of Stewart, J., with Blackmun, Powell, and Stevens, JJ.) (footnotes and citations omitted). See also id. at 433, 100 S.Ct. at 1767 (Marshall, J., with Brennan, J., concurring in the judgment) (reiterating their belief that "the death penalty is in all circumstances cruel and unusual punishment forbidden by the Eighth and Fourteenth Amendments.") The jury had found only that the offense was "outrageously or wantonly vile, horrible and inhuman." Id. at 428, 100 S.Ct. at 1765 (footnote omitted). Because "[t]here is nothing in these few words, standing alone, that implies any inherent restraint on the arbitrary and capricious infliction of the death sentence ... the jury's interpretation of [the aggravating circumstance] can only be the subject of sheer speculation." Id. at 428-29, 100 S.Ct. at 1765.
 
 
 43
 The plurality also found that the jury's uncontrolled discretion was not cured on appeal in the state courts. While in cases preceding Godfrey the Georgia Supreme Court had applied a narrowing construction of the statutory provision, in Godfrey the state court "simply asserted that the verdict was 'factually substantiated.' " Id. at 432, 100 S.Ct. at 1767. Therefore, the plurality considered "whether, in light of the facts and circumstances of the murders ... the Georgia Supreme Court can be said to have applied a constitutional construction" of the statutory phrase. Id. The plurality concluded that "[t]here is no principled way to distinguish this case, in which the death penalty was imposed, from the many cases in which it was not." Id. at 433, 100 S.Ct. at 1767. Accordingly, the Court reversed the sentence of death.
 
 
 44
 The Oklahoma Court of Criminal Appeals has reviewed almost thirty cases in which the death penalty was imposed after the jury concluded that a murder was "especially heinous, atrocious, or cruel." The court originally held that this aggravating circumstance must be applied according to the narrowing construction approved in Proffitt, but Oklahoma has since abandoned that construction.
 
 
 45
 In Eddings v. State, 616 P.2d 1159 (Okla.Crim.App.1980), rev'd on other grounds sub nom. Eddings v. Oklahoma, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982), the Oklahoma Court of Criminal Appeals considered the "especially heinous, atrocious, or cruel" provision for the first time. The court recognized that "[t]he aggravating circumstance in the statute is for murders that are especially heinous, atrocious and cruel, and obviously the Legislature must have intended to reach killings which are 'out of the ordinary.' " Id. at 1167 (emphasis original). The court then quoted the following passage from the narrowing construction of the Florida court that the Supreme Court had approved in Proffitt:
 
 
 46
 "[W]e feel that the meaning of such terms is a matter of common knowledge, so that an ordinary man would not have to guess at what was intended. It is our interpretation that heinous means extremely wicked or shockingly evil; that atrocious means outrageously wicked and vile; and, that cruel means designed to inflict a high degree of pain with utter indifference to, or even enjoyment of, the suffering of others. What is intended to be included are those capital crimes where the actual commission of the capital felony was accompanied by such additional acts as to set the crime apart from the norm of capital felonies--the conscienceless or pitiless crime which is unnecessarily torturous to the victim."
 
 
 47
 Eddings, 616 P.2d at 1167-68 (quoting Dixon, 283 So.2d at 9). The court concluded that the killing of a police officer in the performance of his duties satisfied this standard,[5] and that the testimony at trial regarding the defendant's manner indicated that the killing was " 'designed to inflict a high degree of pain with utter indifference to ... the suffering of others.' " Eddings, 616 P.2d at 1168 (quoting Dixon, 283 So.2d at 9).
 
 
 48
 Since Eddings, the Oklahoma court has consistently followed that part of the narrowing construction approved in Proffitt providing that " 'heinous' means 'extremely wicked or shockingly evil'; 'atrocious' means 'outrageously wicked and vile'; and 'cruel' imports a design to inflict a high degree of pain with utter indifference to, or even enjoyment of, the suffering of others.' " Brogie v. State, 695 P.2d 538, 542 (Okla.Crim.App.1985) (quoting Stafford v. State, 665 P.2d 1205, 1217 (Okla.Crim.App.1983), vacated on other grounds, 467 U.S. 1212, 104 S.Ct. 2651, 81 L.Ed.2d 359 (1984)). The court has frequently approved jury instructions using this language. See, e.g., Davis v. State, 665 P.2d 1186, 1202 (Okla.Crim.App.), cert. denied, 464 U.S. 865, 104 S.Ct. 203, 78 L.Ed.2d 177 (1983); Burrows v. State, 640 P.2d 533, 542 (Okla.Crim.App.1982), cert. denied, 460 U.S. 1011, 103 S.Ct. 1250, 75 L.Ed.2d 480 (1983); Chaney v. State, 612 P.2d 269, 280 (Okla.Crim.App.1980), cert. denied, 450 U.S. 1025, 101 S.Ct. 1731, 68 L.Ed.2d 219 (1981).
 
 
 49
 The court has also quoted the passage in Eddings--originally approved in Proffitt--that limits this aggravating circumstance to "the conscienceless or pitiless crime which is unnecessarily torturous to the victim." Nuckols v. State, 690 P.2d 463, 471-73 (Okla.Crim.App.1984), cert. denied, 471 U.S. 1030, 105 S.Ct. 2050, 85 L.Ed.2d 323 (1985); Boutwell v. State, 659 P.2d 322, 329 (Okla.Crim.App.1983); Burrows, 640 P.2d at 542.[6] The Oklahoma Court of Criminal Appeals has never held that this language is mandatory, however, thus rejecting part of the narrowing construction approved in Proffitt and seemingly adopted in Eddings. In Irvin v. State, 617 P.2d 588, 598-99 (Okla.Crim.App.1980), the court held that it was not mandatory to include the "unnecessarily torturous to the victim" language in the instructions to the jury. Three years later, in Davis, 665 P.2d at 1202-03, the court rejected the argument that a substantial amount of torture must precede the killing for a murder to be "especially heinous, atrocious, and cruel." Then, in Nuckols, the court held:
 
 
 50
 [Our] cases make clear that suffering of the victim is not the major factor we consider regarding this aggravating circumstance. ... [T]he "manner of the killing" is a relevant consideration, as well as the circumstances surrounding the homicide. We also have examined the killer's attitude to learn if it was especially pitiless or cold.
 
 
 51
 690 P.2d at 472 (citations omitted). The court concluded that "both the circumstances leading up to, and the manner in which the homicide was committed, [are] sufficiently atrocious to be at the 'core' of the circumstance." Id. at 472-73.
 
 
 52
 The Oklahoma Court of Criminal Appeals then decided Cartwright's appeal in this case. The jury at Cartwright's trial had been instructed that "the term 'heinous' means extremely wicked or shockingly evil; 'atrocious' means outrageously wicked and vile; 'cruel' means pitiless, or designed to inflict a high degree of pain, utter indifference to, or enjoyment of, the sufferings of others." On appeal the court noted that the statute is written in disjunctive language--the murder must be especially heinous, atrocious, or cruel--so a murder need only fall within one of these terms as defined by the court. Cartwright v. State, 695 P.2d at 554. The court then held that while torture is sufficient to satisfy this aggravating circumstance, it is not necessary. Id. The court described some of the factors that had supported this aggravating circumstance in previous cases: the defendant knew the victim and planned the murder well in advance, Boutwell, 659 P.2d at 329; the defendant shot his victims several times, Davis, 665 P.2d at 1202-03; the defendant shot three persons in a barroom for no apparent reason, Jones v. State, 648 P.2d 1251, 1259 (Okla.Crim.App.1982), cert. denied, 459 U.S. 1155, 103 S.Ct. 799, 74 L.Ed.2d 1002 (1983); and the defendant kidnapped two women, demanded $500,000 in ransom, and murdered and buried the women. Chaney, 612 P.2d at 280, 282. The court wrote:
 
 
 53
 Therefore, we decline to consider this murder as though it occurred in a vacuum. We deem it proper to gauge whether the murder was heinous, atrocious or cruel in light of the circumstances attendant to the murder, including the evidence that the appellant had previously expressed his intentions to "get even" with the Riddles; that he probably had been inside the Riddles' home as early as 11:13 a.m. on the day of the murder; that he either lay in wait for them, or returned under the cover of darkness, and broke into their home to stalk them; that he attacked Charma immediately upon being discovered; that having gunned her down, he went into the living room and slayed Hugh; that Hugh doubtless heard the shotgun blasts which tore through Charma's body; that he quite possibly experienced a moment of terror as he was confronted by the appellant and realized his impending doom; that the appellant again attempted to kill Charma in a brutal fashion upon discovery that his first attempt was unsuccessful; that he attempted to conceal his deeds by disconnecting the telephone and posting a note on the door; and that his apparent attempt to steal goods belonging to the Riddles by loading them in their vehicle was prevented only by the arrival of the police officers, adequately supported the jury's finding. See as well our discussion in Nuckols v. State, 690 P.2d 463, 55 O.B.A.J. 2259 (Okl.Cr.1984), of the consideration to be given to the manner of a killing in determining whether a murder is heinous, atrocious or cruel.
 
 
 54
 Cartwright v. State, 695 P.2d at 554 (emphasis added).
 
 
 55
 The construction of "especially heinous, atrocious, or cruel" employed by the Oklahoma Court of Criminal Appeals in this case is a departure from the construction initially adopted in Eddings. The court no longer limits this aggravating circumstance to murders that are "unnecessarily torturous to the victim," one of the standards adopted in Eddings and previously approved by the Supreme Court in Proffitt. The court now relies upon the definitions of the terms "heinous," "atrocious," and "cruel," and upon the manner of the killing, the attitude of the killer, the suffering of the victim, and all of the circumstances surrounding the murder. We must decide whether this construction serves to "channel the sentencer's discretion by 'clear and objective standards' that provide 'specific and detailed guidance,' and that 'make rationally reviewable the process for imposing a sentence of death.' " Godfrey, 446 U.S. at 428, 100 S.Ct. at 1764 (footnotes omitted).
 
 
 56
 Oklahoma has defined "heinous" as "extremely wicked or shockingly evil" and "atrocious" as "outrageously wicked and vile." These definitions fail for the same reason that the conclusory statement that the offense was "outrageously wicked and vile, horrible and inhuman" was inadequate in Godfrey: "There is nothing in these few words, standing alone, that implies any inherent restraint on the arbitrary and capricious infliction of the death sentence." 446 U.S. at 428, 100 S.Ct. at 1765. A limiting construction of this aggravating circumstance is necessary precisely because adjectives such as "wicked" or "vile" can fairly be used to describe any murder. These terms simply elude objective definition. A state does not channel the discretion of a sentencer or distinguish among murders when "heinous" and "atrocious" are defined only as "extremely wicked and shocking" and "outrageously wicked and vile." "Heinous" and "atrocious" have not been described in terms that are commonly understood, interpreted, and applied. Vague terms do not suddenly become clear when they are defined by reference to other vague terms.
 
 
 57
 The definition of "cruel" as "designed to inflict a high degree of pain with utter indifference to, or even enjoyment of, the suffering of others" is somewhat more precise, but there are two reasons why this definition does not now serve as an adequate standard. First, the Oklahoma court has clearly rejected the argument that the suffering of the victim is the major factor to be considered under this aggravating circumstance. See Nuckols, 690 P.2d at 472; see also Green v. State, 713 P.2d 1032, 1044 (Okla.Crim.App.1985), cert. denied, --- U.S. ----, 107 S.Ct. 241, 93 L.Ed.2d 165 (1986). Second, because the Oklahoma court has emphasized that a murder need only be especially heinous, atrocious, or cruel, see Cartwright v. State, 695 P.2d at 544, even if the definition of cruel was adequate, the vague definitions of atrocious and heinous would still allow a sentencer to rely upon an unconstitutionally vague standard in determining that a murder satisfies this aggravating circumstance. The court no longer limits the application of the "especially heinous, atrocious, or cruel" aggravating circumstance to those crimes that are "unnecessarily torturous to the victim." See id.
 
 
 58
 According to the state, the terms "heinous," "atrocious," and "cruel," coupled with their definitions, direct the attention of the sentencer to the manner of the killing and the attitude of the killer. Transcript of oral argument at 19. The Oklahoma court has said that the attitude of the killer, the manner of the killing, the suffering of the victim, and all of the circumstances of the offense are relevant considerations in determining whether a murder was "especially heinous, atrocious, or cruel." See Nuckols, 690 P.2d at 472; see also Liles v. State, 702 P.2d 1025, 1032 (Okla.Crim.App.1985), cert. denied, --- U.S. ----, 106 S.Ct. 2291, 90 L.Ed.2d 732 (1986). We examine each factor in turn.
 
 
 59
 In several cases the Oklahoma court has cited the killer's "conscienceless" or "pitiless" attitude or indifference to the suffering of the victim in supporting a finding that a murder was "especially heinous, atrocious, or cruel." See, e.g., Green, 713 P.2d at 1044-45; Cooks v. State, 699 P.2d 653, 661 (Okla.Crim.App.), cert. denied, 474 U.S. 935, 106 S.Ct. 268, 88 L.Ed.2d 275 (1985); Boutwell, 659 P.2d at 329; Jones, 648 P.2d at 1259. But as the court has recognized, the attitude of the killer is best evidenced by what the killer has done. See Green, 713 P.2d at 1044-45. See also Nuckols, 690 P.2d at 473 ("the circumstances of this killing, coupled with appellant's comments ... reveal this crime was shockingly pitiless"). Thus, the inquiry into the killer's attitude inevitably collapses into a consideration of the manner of the killing, the suffering of the victim, or the circumstances of the offense.
 
 
 60
 "[T]he manner of death in one case may certainly be distinguishable from another in the degree of atrocity or cruelty." Chaney, 612 P.2d at 280. The unanswered question, however, is what manner of killing makes a murder "especially heinous, atrocious, or cruel." The Oklahoma court has never explained why one manner of killing is "especially heinous, atrocious, or cruel" and why another manner of killing is not. The cases in which the court has found the manner of the killing to support this aggravating circumstance do not reveal any pattern or consistency in the way in which the murder was committed. See, e.g., Green, 713 P.2d at 1035 (defendant stabbed an inmate seventeen times in the chest and the back with a butcher knife and slashed in the throat); Cooks, 699 P.2d at 656 (defendant raped, beat, and suffocated an 87-year-old disabled woman); Nuckols, 690 P.2d at 465, 472-73 (defendant struck the victim with a ball peen hammer and kicked him repeatedly); Jones, 648 P.2d at 1253-54 (defendant repeatedly shot three persons in a bar). But see Odum v. State, 651 P.2d 703, 707 (Okla.Crim.App.1982) ("the manner of killing cannot be said to lie at the 'core' of the statutory aggravating circumstance" where the defendant shot the victim once in the neck and rendered him unconscious immediately). Further, the Oklahoma court has held a torture murder is not the only kind that is "especially heinous, atrocious, or cruel." See Cartwright v. State, 695 P.2d at 554. The court has not identified which manners of killing are not "especially heinous, atrocious, or cruel." Therefore, the court's reliance upon the manner of the killing does not serve to distinguish among those murders that are punishable by death and those that are not.
 
 
 61
 The suffering of the victim has been relied upon in several instances in which this aggravating circumstance was found. See, e.g., Liles, 702 P.2d at 1032; Stafford, 665 P.2d at 1217; Burrows, 640 P.2d at 543. On one occasion, the absence of any suffering by the victim led the state appeals court to reverse a finding that a murder was "especially heinous, atrocious, or cruel." Odum, 651 P.2d at 707. Nonetheless, the court has held that it is not necessary for the victim to have suffered for a murder to satisfy this aggravating circumstance. See Nuckols, 690 P.2d at 472. Suffering is sufficient but not required.
 
 
 62
 The Oklahoma Court of Criminal Appeals, then, has said that the attitude of the killer, the manner of the killing, or the suffering of the victim can support this aggravating circumstance, but the court has refused to hold that any one of those factors must be present for a murder to satisfy this aggravating circumstance. The underlying position of the Oklahoma court appears to be that it can simply review the circumstances of the murder and divine whether the murder was "especially heinous, atrocious, or cruel." See Cartwright v. State, 695 P.2d at 554; see also Nuckols, 690 P.2d at 472, quoted in Green, 713 P.2d at 1044. In numerous cases the court has affirmed a finding that a murder was "especially heinous, atrocious, or cruel" with no more than a statement that "the facts adequately support" the aggravating circumstance. Ake v. State, 663 P.2d 1, 11 (Okla.Crim.App.1983), rev'd on other grounds, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). See also, e.g., Coleman v. State, 668 P.2d 1126, 1138 (Okla.Crim.App.1983), cert. denied, 464 U.S. 1073, 104 S.Ct. 986, 79 L.Ed.2d 222 (1984); Hays v. State, 617 P.2d 223, 231-32 (Okla.Crim.App.1980).
 
 
 63
 We agree that all of the circumstances surrounding a murder must be examined to determine whether the murder was "especially heinous, atrocious, or cruel," but there must be some objective standard that specifies which circumstances support such a determination. Consideration of all the circumstances is permissible; reliance upon all of the circumstances is not. When the sentencer is free to rely upon any particular event that it believes makes a murder "especially heinous, atrocious, or cruel," the meaning that the sentencer attached to this provision "can only be the subject of sheer speculation." Godfrey, 428 U.S. at 429, 100 S.Ct. at 1765. Indeed, courts that have considered similar aggravating circumstances have held:
 
 
 64
 [A murder] can be especially heinous because the victim is too young, too old, or because the defendant chose his victims so that they were not too young or too old. If the defendant killed for no reason, the murder is especially heinous, as is a murder committed for a reason the appellate court does not like. A killing is especially heinous if the victim is aware of the impending death, and also if the killing is done without warning.
 
 
 65
 Rosen, The Standardless Standard, 64 N.C.L.Rev. at 989 (footnotes omitted). The discretion of a sentencer who can rely upon all of the circumstances of a murder is as complete and as unbridled as the discretion afforded the jury in Furman. No objective standards limit that discretion.
 
 
 66
 In this case the court described the events surrounding the murder including the petitioner's motive for the murder, the preparation for the attack, the attack itself, and the petitioner's efforts to conceal his activities. The court then held that these events "adequately supported the jury's finding." Cartwright v. State, 695 P.2d at 554. This conclusion is no different than the finding that the verdict was "factually substantiated" that was held inadequate in Godfrey. 446 U.S. at 419, 100 S.Ct. at 1760. We therefore hold that the Oklahoma Court of Criminal Appeals failed to apply a constitutionally required narrowing construction of "especially heinous, atrocious, or cruel" in this case.
 
 III.
 
 67
 The question remains whether this court can sua sponte adopt a constitutionally permissible narrowing construction of "especially heinous, atrocious, or cruel" and apply that construction to the facts of this case.
 
 
 68
 In Godfrey, the plurality characterized the failure of the state court to apply a proper narrowing construction as an aberrational lapse. 446 U.S. at 430-32, 100 S.Ct. at 1765-66. But see id. at 435-36, 100 S.Ct. at 1768-69 (Marshall, J., concurring in the judgment) (arguing that the Georgia court had either abandoned or consistently broadened its previous narrowing construction of the statutory provision). The plurality then applied the narrowing construction usually employed by the Georgia court to the facts of the murders in that case. The Oklahoma court, on the other hand, has now explicitly denied the necessity of finding that a murder was "unnecessarily torturous to the victim." Compare Cartwright v. State, 695 P.2d at 554 (torture is sufficient but not necessary) with Eddings, 616 P.2d at 1168. ("What is intended [is] the conscienceless or pitiless crime which is unnecessarily torturous to the victim.") The Oklahoma court has also rejected the argument that the suffering of the victim is the primary factor to be considered in deciding whether this aggravating circumstance can be applied to a particular murder. See Nuckols, 690 P.2d at 472; Green, 713 P.2d at 1044. The remaining "standards" advanced by the Oklahoma court are unconstitutionally vague. Therefore, unlike the Court in Godfrey, there is no constitutionally adequate narrowing construction adopted by the state courts that we can apply to the instant case.
 
 
 69
 We do not decide what narrowing construction of the "especially heinous, atrocious, or cruel" aggravating circumstance would satisfy the constitutional requirements. That determination must be made by the state in the first instance as it construes its own laws in light of constitutional requirements. The Supreme Court has pointedly declined the opportunity "to dictate to the State the particular substantive factors that should be deemed relevant to the capital sentencing decision." Ramos, 463 U.S. at 999, 103 S.Ct. at 3452 (emphasis original). The Ramos Court concluded:
 
 
 70
 It would be erroneous to suggest, however, that the Court has imposed no substantive limitations on the particular factors that a capital sentencing jury may consider in determining whether death is appropriate. In Gregg itself the joint opinion suggested that excessively vague sentencing standards might lead to the arbitrary and capricious sentencing patterns condemned in Furman. ...
 
 
 71
 Beyond these limitations, as noted above, the Court has deferred to the State's choice of substantive factors relevant to the penalty determination.
 
 
 72
 Id. at 1000-01, 103 S.Ct. at 3452-53.
 
 
 73
 We have held that the construction of the "especially heinous, atrocious, or cruel" aggravating circumstance applied by the Oklahoma Court of Criminal Appeals in this case is unconstitutionally vague. We will not presume to specify "the factors about the crime and the defendant that the State, representing organized society, deems particularly relevant to the sentencing decision." Id. at 1000, 103 S.Ct. 3452 (emphasis original) (quoting Gregg, 428 U.S. at 192, 96 S.Ct. at 2934).
 
 IV.
 
 74
 We make no judgment as to whether the attack in this case was "especially heinous, atrocious, or cruel." We hold only that the Oklahoma courts failed to guide the sentencer's discretion with constitutionally adequate standards.
 
 
 75
 The order of the District Court for the Eastern District of Oklahoma is affirmed with respect to the denial of the writ but reversed with respect to its denial of all further relief. The case is remanded to the district court with directions to enter judgment that the writ of habeas corpus is denied but, as law and justice require,[7] the death sentence of petitioner is invalid under the Eighth and Fourteenth Amendments to the United States Constitution. The execution of the petitioner under this invalid death sentence is enjoined. This judgment is without prejudice to further proceedings by the state for redetermination of the sentence on the conviction.[8]
 
 
 76
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 
 
 
 [1]
 Cartwright was also convicted of shooting Charma Riddle with intent to kill. He was sentenced to seventy-five years imprisonment for that crime
 
 
 [2]
 The previous panel decision disposed of all six of Cartwright's suggested grounds for habeas relief. See Cartwright v. Maynard, 802 F.2d at 1209-22. We do not disturb the decision of the panel regarding five of those issues. We only consider Cartwright's allegation that Oklahoma's application of the "especially heinous, atrocious, or cruel" aggravating circumstance in this case was vague and overbroad in violation of the Eighth and Fourteenth Amendments to the Constitution of the United States
 
 
 [3]
 At the time that Cartwright was sentenced, the Oklahoma Court of Criminal Appeals had a statutory obligation to determine "[w]hether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant." Okla.Stat.Ann. tit. 21, Sec. 701.13(C)(3) (West 1983). The court held that Cartwright's death sentence was not "excessive or disproportionate to the penalty imposed in similar cases." Cartwright v. State, 695 P.2d at 555
 The state asserts that this "proportionality review" would save the death sentence in this case even if one of the aggravating circumstances is found to be unconstitutionally vague or overbroad. Zant and Barclay noted that the state appeals courts in those cases had performed a proportionality review. Zant, 462 U.S. at 879-80, 103 S.Ct. at 2743-44; Barclay, 463 U.S. at 958, 972-74, 103 S.Ct. at 3436-37. Neither decision, however, suggested that a proportionality review could serve as an independent basis for upholding a death sentence imposed after reliance upon an unconstitutional aggravating circumstance. Zant emphasized the special role of an aggravating circumstance in Georgia. 462 U.S. at 879, 103 S.Ct. at 2743. Barclay emphasized that the Florida Supreme Court had considered only the valid aggravating circumstances in rebalancing on appeal. Barclay, 463 U.S. at 958, 103 S.Ct. at 3429. Moreover, since Zant and Barclay it has been established that a proportionality review is not constitutionally required. Pulley v. Harris, 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984). We conclude that the proportionality review in this case would not save the death penalty because reliance upon the allegedly unconstitutional aggravating circumstances was not cured on appeal.
 
 
 [4]
 The Oklahoma Court of Criminal Appeals affirmed Cartwright's sentence on January 7, 1985. Cartwright v. State, 695 P.2d at 548. Later that year Oklahoma modified its capital punishment statute to allow for resentencing in the event that a death penalty is set aside on appeal. Okla.Stat.Ann. tit. 21, Sec. 701.13(E)(2) (West Supp.1986). The Oklahoma court has held that this provision is not to be applied retroactively. Green v. State, 713 P.2d 1032, 1041 n. 4 (Okla.Crim.App.1985), cert. denied, --- U.S. ----, 107 S.Ct. 241, 93 L.Ed.2d 165 (1986). But see Brewer v. State, 718 P.2d 354, 365-66 (Okla.Crim.App.), (holding that a provision in the 1985 amendments eliminating mandatory proportionality review is to be applied retroactively), cert. denied, --- U.S. ----, 107 S.Ct. 245, 93 L.Ed.2d 169 (1986). Even if this provision were to be applied retroactively, the need for resentencing if an invalid aggravating circumstance was considered would put Oklahoma squarely in line with the Arkansas procedure described in Collins, 754 F.2d at 267, and would not eliminate the necessity of vacating a death sentence based in whole or in part upon consideration of an unconstitutional aggravating circumstance
 
 
 [5]
 The United States Supreme Court vacated the death sentence in Eddings because the state court had failed to consider evidence of the defendant's unhappy upbringing and emotional disturbance as a mitigating factor. Eddings v. Oklahoma, 455 U.S. 104, 113-17, 102 S.Ct. 869, 876-78, 71 L.Ed.2d 1 (1982). The Court also noted in dicta that the state court had held that the murder of a police officer in the performance of his duties is "heinous, atrocious, or cruel." In response, the Court said, "we doubt that the trial judge's understanding and application of this aggravating circumstance conformed to that degree of certainty required by our decision in Godfrey." Id. at 109 n. 4, 102 S.Ct. at 874 n. 4
 
 
 [6]
 The uniform jury instruction which defines "heinous, atrocious, or cruel" provides:
 As used in these instructions, the term "heinous" means extremely wicked or shockingly evil; "atrocious" means outrageously wicked and vile; "cruel" means pitiless, or designed to inflict a high degree of pain, utter indifference to, or enjoyment of, the sufferings of others.
 The phrase "especially heinous, atrocious, or cruel" is directed to those crimes where the death of the victim was preceded by torture of the victim or serious physical abuse.
 Okla. Uniform Jury Instruction Cr. No. 436. This instruction has been used on occasion. See, e.g., State v. Liles, No. CRF-82-4268 (Okla. County Dist. Ct. May 18, 1983) (Instruction No. 3), aff'd, 702 P.2d 1025 (Okla.Crim.App.1985), cert. denied, --- U.S. ----, 106 S.Ct. 2291, 90 L.Ed.2d 732 (1986), quoted in Supplement to Record, Mar. 3, 1987, at 4.
 
 
 [7]
 The federal habeas statute empowers the federal courts to make disposition of the matter "as law and justice require." 28 U.S.C. Sec. 2243; Carafas v. LaVallee, 391 U.S. 234, 239, 88 S.Ct. 1556, 1560, 20 L.Ed.2d 554 (1968); Chaney v. Brown, 730 F.2d 1334, 1358 (10th Cir.), cert. denied, 469 U.S. 1090, 105 S.Ct. 601, 83 L.Ed.2d 710 (1984)
 
 
 [8]
 We express no opinion concerning the constitutionality of a retroactive application of Oklahoma's new remand procedure. See Dutton v. Brown, 812 F.2d 593, 602 n. 10 (10th Cir.1987) (en banc), petition for cert. filed, 55 U.S.L.W. 3747 (U.S. May 5, 1987)