**James Lynn BENNETT, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–84–227.**

Court of Criminal Appeals of Oklahoma.

Sept. 24, 1987.

Patti Palmer, Deputy Appellate Public Defender, Norman, for appellant.

Michael C. Turpen, Atty. Gen., David Lee, Asst. Atty. Gen., Oklahoma City, for appellee.

**OPINION**

BRETT, Presiding Judge:

James Lynn Bennett, appellant, was tried by jury for the crime of Murder in the First Degree in the District Court of Payne County in Case No. CRF–82–473. Appellant was represented by counsel. The jury returned a verdict of guilty and set punishment at life imprisonment. The trial court sentenced appellant in accordance with the

jury's verdict. From this judgment and sentence, appellant appeals to this Court.

At trial, Donald Hicks testified that on Sunday, August 8, 1982, he was present at appellant's residence when he overheard a conversation between Deborah Holland, Ronald Benefield and appellant. Mr. Hicks heard Deborah Holland state that she thought Michael Graham was a "narc", meaning an undercover narcotics agent. Mr. Hicks related that Ronald Benefield became extremely angry and started swinging a shotgun around exclaiming, "I'll kill the motherfucker!" Mr. Hicks testified that appellant left the room stating, "I'll set it up." After using the telephone, appellant returned and declared that everything had been set.

Cynthia Bell testified, that on August 9, 1982, she and Michael Graham drove a Bray Trucklines tractor to appellant's house. Some time later, Michael Graham and Ronald Benefield left in the tractor. Ms. Bell testified that appellant told her that everyone thought Mr. Graham was a narc, and that if he was, he would not be coming back. After making that statement, appellant left his house in a blue El Camino. Later that afternoon, appellant and Ronald Benefield returned in the El Camino. Appellant told Ms. Bell that if it was any consolation, Mr. Graham confessed to being a narc before he died.

Virginia Bennett, wife of appellant, testified that on the night of August 8, 1982, Donald Hicks and Deborah Holland came to the Bennett residence. Deborah Holland stated that she had learned that Mr. Graham was a narc. Mrs. Bennett related that an argument ensued about doing away with Mr. Graham. She corroborated the testimony of Donald Hicks as to Ronald Benefield becoming upset and threatening Mr. Graham. She further admitted that appellant had offered to set it up and had left the room, returning later to claim that it had been set. Mrs. Bennett further testified that on August 9, Ronald Benefield and Mr. Graham left in Mr. Graham's tractor. She related that appellant left a short while later in Ronald Benefield's El Camino. She stated that when appellant and Ronald Benefield returned, appellant took her and Deborah Holland into the bedroom and told them that Mr. Graham was dead.

Scott Flowers testified that on August 11, 1982, he and twelve other people were working for a utility company clearing right-of-ways. While near the mouth of the Stillwater Creek and the Cimarron River, they found a partially decomposed body lying in the middle of the road. The workers drove immediately to Ripley, Oklahoma, and reported the discovery to the town marshall, Walter Longan. Officer Longan followed the workers to the location of the body and secured the scene. Thereafter, he notified the Payne County Sheriff's Office.

Payne County Undersheriff Jack Stark testified that while he was driving to the location of the body, he observed a Bray Trucklines tractor beneath some trees on a side road. At trial, Officer Stark identified certain items of physical evidence that he had discovered near the body and documents he had found inside the tractor. From his investigation, Officer Stark learned that the tractor had been seen near the house of appellant. He stated that he went to appellant's residence and obtained personal property of the deceased. Through the investigation, he identified the deceased as Michael Graham.

Three students at Oklahoma State University also testified at trial. According to the students, on August 9, they were driving near the Cimmarron River looking for a place to do some target shooting. They drove upon a blue El Camino, with a man sitting in the driver's side. At trial, the students identified that man to be the appellant. They testified that appellant greeted them and told them that he had been doing some target shooting, while waiting on a friend. After a short while, another man appeared down the road. The students testified that when the other man arrived at the car, he stated to appellant, "let's go." The students identified the other man to be Ronald Benefield.

At trial, the only disputed issue was whether appellant had planned or assisted Ronald Benefield in the murder of Michael

Graham. Appellant testified that he did not know Ronald Benefield had planned to kill Mr. Graham. He testified that he was under the impression that Ronald Benefield had planned to beat up Mr. Graham, if indeed Mr. Graham was a narc. Appellant claimed that he did not know of Mr. Graham's death until after he and Ronald Benefield were driving away from the shooting range. Appellant testified that he did not come forward with information concerning the murder because he feared Ronald Benefield.

In his first assignment of error, appellant argues that the trial court erred when it admitted photographs into evidence after the case had been submitted to the jury. Specifically, appellant argues that the prejudicial effect of the photographs outweighed any probative value.

It is within the trial court's discretion to determine the appropriateness of reopening a case. *Shipman v. State,* 639 P.2d 1248 (Okl.Cr.1982). The trial court's decision will not be disturbed on appeal unless an abuse of discretion is evident from the record. We find no abuse of discretion in the record. Moreover, we find the photographs to be probative as to the cause of death of the deceased. This assignment is without merit.

 Under his second assignment of error, appellant claims that there was insufficient evidence to support his conviction for aiding and abetting first-degree murder. In *Speuhler v. State,* 709 P.2d 202 (Okl.Cr. 1985), this Court stated the test for a charge of insufficiency of the evidence. We declared that, when reviewing the sufficiency of the evidence, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 203. Accordingly, viewing the evidence in the light most favorable to the prosecution, we conclude that there was sufficient evidence from which any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt. This assignment of error is without merit.

In his third and fourth assignments of error, appellant claims the trial court erred by failing to give instructions for Murder in the Second Degree or Manslaughter in the First Degree. Specifically, appellant asserts that the evidence failed to prove a premeditated design to effect the death of Michael Graham. At trial, appellant took the stand and admitted that he was in the room the night the plan to kill Michael Graham was conceived. He admitted making the statement that he would set it up. He also admitted waiting at the shooting range after Mr. Benefield had told him to meet him there. However, appellant offered as an alibi, his explanation that he had no idea Mr. Benefield had planned to kill Michael Graham. It has long been held by this Court, that when a defendant, who has a right of election as to several defenses, takes the stand as a witness and makes such admissions as to render every theory of defense unavailable save one, he will be deemed to have elected that one. *Spuehler v. State,* 709 P.2d 202 (Okl.Cr.1985).

 The record simply does not support appellant's contention that he acted with a depraved mind or in the heat of passion. Where there is no evidence to support a lower degree of the crime charged or lesser included offense, it is not only unnecessary to instruct thereon, the court has no right to ask the jury to consider the issue. *Hill v. State,* 672 P.2d 308 (Okl.Cr.1983). Appellant's participation in the crime rendered him a principal under our laws. He is therefore subject to the same charges and punishment as though he had committed the murder himself. Appellant was either guilty of murder in the first degree or he was innocent. We find no error in the refusal to instruct on second degree murder or first degree manslaughter. These assignments of error are without merit.

Under appellant's fifth assignment of error, he contends that the trial court erred by failing to instruct on the crime of Accessory After the Fact. We find *Williams v. State,* 620 P.2d 421 (Okl.Cr.1980), to be dispositive of this issue, wherein it is stated that accessory after the fact is not a lesser

and included offense of the principal crime. It would have been error for the trial court to give such an instruction. This assignment is wholly without merit.

■ Appellant's sixth assignment of error alleges that the trial court erred in refusing the jury's request to have a witness' testimony during deliberations. Initially, we note that the decision to allow or disallow the jury's request lies within the discretion of the trial court. *See Givens v. State,* 705 P.2d 1139 (Okl.Cr.1985). From the record before us, we have no reason to believe that the jury did not understand the witness' testimony as it was given in court. We are of the opinion that the trial court acted properly when admonishing the jury to rely on their collective memories as to the substance of the testimony. Accordingly, we decline to hold that the trial court abused its discretion.

In appellant's seventh assignment of error, he asserts that the jury did not represent a fair and impartial cross section of the community because those jurors who could not impose the death penalty were removed for cause. Specifically, appellant complains that such a jury is conviction-prone, excludes identifiable groups and is improperly focused on the sentencing phase. This Court has rejected this argument numerous times. *See Devooght v. State,* 722 P.2d 705 (Okl.Cr.1986), and *Van-Woundenberg v. State,* 720 P.2d 328 (Okl.Cr.1986). For the reasons stated therein, we again deny such an argument. This assignment of error is without merit.

■ Appellant's eighth assignment of error contends that the trial court erred by allowing the State to present evidence of other crimes committed by appellant, without the ten day notice as required by *Burks v. State,* 594 P.2d 771 (Okl.Cr.1979). After a review of the record, we find, that in this particular case, the drug dealings of the appellant, combined with the drug dealings of the people involved in this murder, to be an integral part of the entire circumstances surrounding the commission of the murder. Therefore, we find the evidence of other crimes to be a part of the res

gestae of the crime charged, and thus, requiring no notice under *Burks.*

Under appellant's ninth assignment of error, he alleges that the trial court erred in failing to issue a limiting instruction concerning the other crime evidence. Since this Court determined in the eighth assignment of error that the evidence of other crimes was part of the res gestae, a limiting instruction would have been unwarranted. This assignment of error is without merit.

In appellant's tenth assignment of error, he alleges that he was denied a fair trial by prosecutorial misconduct. We have carefully examined the record and find no statements upon which error can be predicated. After reviewing the remarks cited by appellant, we find that the prosecutor did not go beyond the bounds established for closing argument. The right of argumentation contemplates liberal freedom of speech and range of discussion. Both sides may discuss fully from their standpoints the evidence and the inferences to be drawn therefrom. Only when improper conduct affects the appellant's rights can a reversal be justified. *Kennedy v. State,* 640 P.2d 971 (Okl.Cr.1982). This assignment is without merit.

In his final assignment of error, appellant alleges that the trial court erred in refusing to appoint experts and investigators, at the State's expense, to aid in his defense, thereby denying him his right to due process and equal protection. Appellant bases this argument on the holding of the United States Supreme Court in *Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). In *Ake,* the Supreme Court held that when a defendant has made a preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial, the Constitution requires that a State provide access to a psychiatrist's assistance on this issue, if the defendant cannot otherwise afford one. By analogy, appellant argues that the State should provide investigative assistance, if a defendant cannot otherwise afford it. This argument is without merit. We find *Trowbridge v. State,* 502 P.2d 495 (Okl.Cr.1972),

to be dispositive of this issue, wherein this Court held that the trial court did not err in refusing the defendant's request for investigative funds. Therefore, we find no error.

For the reasons stated herein, the judgment and sentence is AFFIRMED.

BUSSEY, J., concurs.

PARKS, J., specially concurs.

PARKS, Judge, specially concurring:

While I agree that the judgment and sentence should be affirmed, I feel it necessary to comment on the issue of state-appointed investigators. The appellant, relying on *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), urges that the trial court erred in refusing to appoint investigators at state expense. The majority finds no error based on *Trowbridge v. State*, 502 P.2d 495 (Okla.Crim.App.1972). Although *Trowbridge* directly addresses the appointment of investigators at state expense, it is questionable whether this is still good law in light of the *Ake* decision. *See Trowbridge, supra* at 502.

*Ake* requires that an indigent defendant be supplied with a psychiatrist if he shows that the services are necessary to protect his due process rights. *Ake, supra,* 105 S.Ct. at 1097. This Court has not yet extended this rule to include investigative services, although this adoption may be mandated at some future time.

Accordingly, I would affirm.