**Cyril Wayne ELLIS, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

No. F–86–887.

Court of Criminal Appeals of Oklahoma.

July 24, 1992.

Opinion Denying Rehearing Jan. 26, 1994.

Lee Ann Jones Peters, Chief of Appellate Div., Oklahoma County Public Defender, Oklahoma City, for appellant.

Robert H. Henry, Atty. Gen., Susan Stewart Dickerson, Asst. Atty. Gen., Oklahoma City, for appellee.

Susan B. Loving, Atty. Gen., Sandra D. Howard, Asst. Atty. Gen., Chief, Criminal Div., Oklahoma City, for appellee on rehearing.

## OPINION

JOHNSON, Judge:

CYRIL WAYNE ELLIS, appellant, was convicted in the District Court of Oklahoma County, Case No. CRF–86–651, on three counts of Murder in the First Degree and four counts of Shooting With Intent to Kill. Appellant was represented by counsel. The jury returned a verdict of guilty on each count and set punishment at death for each count of murder, together with sentences of 2,000 years, 3,000 years, 1,000 years and 1,000 years for the counts of Shooting With Intent to Kill. Appellant appeals to this Court.

The scenario and trail of horror in this case started on January 26, 1986, when the appellant got into an argument with his fiancee, Cheryl James. For the first time in their relationship of over a year he struck her and then later that day when in remorse and in the girlfriend's presence took pills in an apparent suicide attempt. Cheryl then drove him to Presbyterian Hospital where he was hospitalized for a few days and then transferred to the psychiatric ward of St. Anthony's Hospital. On January 29th Cheryl went to visit him and after a couple of hours left. When she got to her car, the appellant came running out behind her and forced her to take him with her. She became afraid and tried to get away from him and managed to get help from a security guard at the Sheraton Center in downtown Oklahoma City. She told the security guard that appellant was acting crazy and he had just gotten out of a mental ward. An altercation occurred and police arrived but they failed to arrest the appellant. Later on January 29, appellant attempted to purchase a hand gun, by falsely telling the store clerks that he operated a restaurant and needed a gun for protection. Appellant did not have enough money to purchase the gun, but a store clerk agreed to loan appellant a gun that he owned. Appellant purchased some bullets for the gun and left the store.

The next morning, appellant was riding around and observed his fiancee, Cheryl James, riding in a car with her sister's boyfriend, Robert Dumas. Appellant pulled along the car and had a conversation with Ms. James through the windows. When Dumas tried to drive away, appellant chased

him and fired at his car. Dumas drove into a yard seeking help and appellant blocked him in. Ms. James jumped out and ran for help. Appellant pointed his gun at Dumas and forced him to get into the trunk of the car. When Dumas beat on the trunk for help, appellant opened it and said, "I see you don't want to live." Appellant fired two shots into Dumas' body and shut the trunk. Dumas survived his injuries.

Appellant next went to Dumas' home, where Ms. James had spent the night with her mother and her sister, Teresa Thomas. Only Ms. Thomas and her six-year-old daughter, Tameca, were at home. Using the butt of a gun, appellant knocked a front window out and shot Ms. Thomas inside the house. When she ran to the back yard, appellant followed and shot her several more times, fatally wounding her. Tameca was found on the back steps of the house. She had been shot three times. Although critically injured, Tameca recovered and testified at trial.

Appellant then returned to his house to retrieve more ammunition before proceeding to his place of employment. Appellant encountered Gordon Moore in the parking lot and ordered him to kneel down on the ground between two cars. Appellant shot him in the face. Mr. Moore, who also recovered, played dead until appellant left. Appellant next went into an office, where he shot Carl Lake. Witness testified hearing Mr. Lake telling appellant to leave, and then hearing a second shot. Mr. Lake was fatally wounded. Appellant then fired at James Rider from the top of a loading dock. After Mr. Rider staggered and fell to the ground, appellant shot him again. Mr. Rider was fatally wounded. As appellant was driving away, a number of men ran out of the place into the parking lot. Appellant stopped, opened fire, reloaded, fired again, and drove away. Ancil Davis was hit but survived.

At trial, appellant did not deny these acts, but raised the defense of insanity.

## ISSUES RELATED TO JURY SELECTION

Appellant claims that he was deprived of his right to trial by a jury composed of a fair cross-section of the community because his jury panel was summoned from a list of registered voters. He claims that this scheme systematically resulted in under-representation of racial minorities.

■ The record reveals that thirty-five people were examined as potential jurors or alternate jurors at appellant's trial. All but four of these identified themselves by race. Of the thirty-one whose races are known, twenty-one may be described as being of European descent, four of Black, four of Native American, one of Asian, and one of Hispanic. Census data was offered to show that in 1980 the population of Oklahoma County contained 82.49 percent Caucasians, 12.35 percent Blacks, 2.51 percent Native Americans, .99 percent Asians, and 1.66 percent others. The known composition of persons examined at trial was 67.74 percent Caucasian, 12.90 percent Black, 12.90 percent Native American, 3.23 percent Asian, and 3.23 percent others. Assuming that the 1980 census data on which appellant relies was still reasonably accurate at the time of his trial, the only group under-represented in this case was Caucasian. The record does not support appellant's assertion that minorities were under-represented due to systematic exclusion. *Cf. Duren v. Missouri,* 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979). Even if we were to accept appellant's contention that one of the Blacks should be considered a Native American, we are compelled to find that any under-representation of Blacks was so slight that there was no violation of the fair-cross-section requirement. *See also Fox v. State,* 779 P.2d 562, 566 (Okl.Cr.1989).

■ Appellant next challenges the composition of the jury on the ground that 38 O.S.1981, § 28(A) permits persons over seventy years of age to excuse themselves from service without showing hardship or other legal excuse. Appellant has provided this Court with no more information to show that these people constitute a distinctive group than was provided in the case of *Moore v. State,* 736 P.2d 161, 165 (Okl.Cr.1987), *cert. denied,* 484 U.S. 873, 108 S.Ct. 212, 98

L.Ed.2d 163 (1987), and we once again reject this argument. *See Fox,* 779 P.2d at 566.

■ Appellant also asserts that the trial court erred in not allowing individual voir dire of each juror, out of the hearing of the others, as to their views on capital punishment. As we noted in *Foster v. State,* 714 P.2d 1031, 1037 (Okl.Cr.1986), *cert. denied* 479 U.S. 873, 107 S.Ct. 249, 93 L.Ed.2d 173 (1986), the manner of conducting voir dire is left to the sound discretion of the trial judge. In this case, the trial judge did allow individual voir dire outside the hearing of other potential jurors when it appeared necessary. Finding no abuse of discretion in the record, the assignment is without merit.

■ Citing *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), appellant claims that reversal is required because the prosecutor exercised his peremptory challenges to remove minorities in an unconstitutionally discriminatory manner. Of the ten non-caucasian people examined to serve as jurors or alternates, the Hispanic served on the jury and one Native American served as an alternate. Two African Americans were excused for cause because one had formed an opinion concerning the case and the other could not sit impartially because of her personal acquaintance with appellant. The Asian and one Native American were removed with appellant's seventh and eighth peremptory challenges. Appellant waived his ninth challenge.

The State used four peremptory challenges to remove two African Americans and two Native Americans. One African American was removed because he appeared inattentive at some times and disruptive at others. The trial judge confirmed the observation, and appellant did not challenge it at trial. The other African American made conflicting statements concerning her ability to keep her mind on the trial if it stretched into the following week because loss of business would leave her unable to pay her bills. Appellant successfully argued that the State's challenge for cause should not be granted, but raised no objection to the State's use of a peremptory challenge to excuse her. The State provided no reason for excusing the Native Americans, nor did appellant raise any objection to the State's use of peremptory challenges to excuse them.

■ On appeal, appellant asserts that a prima facie case of purposeful discrimination is made under *Batson* by showing that the defendant is a member of a cognizable group and that the prosecutor has exercised peremptory challenges to remove members of that group from the venire. However, this is but a partial statement of the law revealed by the Supreme Court. Where a defendant objects to the prosecutor's use of peremptory challenges in the selection of a petit jury, the defendant must also show that the use of peremptories and any other relevant circumstances "raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race." *Batson,* 476 U.S. at 96, 106 S.Ct. at 1723, 90 L.Ed.2d at 88. *See also Modden v. Texas,* 485 U.S. 1040, 108 S.Ct. 1603, 99 L.Ed.2d 917 (1988) (Marshall, J., dissenting). Although the trial court, in an abundance of caution, required the State to announce a neutral reason for the exclusion of any venireman of appellant's race, appellant never objected to the State's use of peremptory challenges and no attempt was made at trial to establish a prima facie case of purposeful discrimination. (Compare *Batson,* where petitioner made a timely objection to the prosecutor's removal of all black persons on the venire). *See also Modden v. Texas, supra; Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987); *Allen v. Hardy,* 478 U.S. 255, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986); *United States v. Brown,* 817 F.2d 674 (10th Cir.1987); *Garrett v. Morris,* 815 F.2d 509 (8th Cir.1987); and *United States v. Chalan,* 812 F.2d 1302 (10th Cir.1987).

In the present case, the trial court was never asked to make a determination whether the State's peremptories were being used in an unconstitutional manner. That is the place where the determination must be

made. "The trial court then will have the duty to determine if the defendant has established purposeful discrimination." *Batson,* 476 U.S. at 96, 106 S.Ct. at 1722. (Emphasis added) "If the trial court decides that the facts establish, prima facie, purposeful discrimination and the prosecutor does not come forward with a neutral explanation for his action, our precedents require that petitioner's conviction be reversed." *Id.* at 97, 106 S.Ct. at 1723. (Emphasis added) "Since the trial judge's findings in the context under consideration here largely turn on evaluation of credibility, a reviewing court ordinarily should give those findings great deference." *Id.* at 96, n. 21, 106 S.Ct. at 1722, n. 21. (Emphasis added) By failing to object or seek a determination by the trial court, appellant has waived this issue for appellate review. *Cf. Manuel v. State,* 751 P.2d 764 (Okl.Cr.1988); *Scott v. State,* 751 P.2d 758 (Okl.Cr.1988); and *Johnson v. State,* 731 P.2d 993 (Okl.Cr.1987).

■ Nevertheless, the trial court, by requiring the State to provide a neutral basis for excusing persons of appellant's race, provided this Court with an adequate record for determination of the issue on the merits. Appellant claims that the neutral reason given by the State to excuse the second African American was nothing more than a pretext to cloak racial discrimination. He bases this assertion on the fact that a white male dentist who expressed concern for his business was not excused by the State. Appellant compares this case to *Garrett v. Morris,* 815 F.2d 509 (8th Cir.1987), in which the government removed black jurors due to their lack of background, education, and knowledge to understand the evidence, when white jurors remained on the panel even though less qualified under those criteria. No such evidence of pretext exists in this case. At no time did the white juror state that he would be unable to devote his full attention to the evidence presented at trial, nor did he state that he

would be unable to pay his bills if required to serve. The reasons relied upon by the State were shown only in the case of the black juror.[1] Appellant's rights under the Fourteenth Amendment as construed in *Batson* were not violated. Appellant cannot fail to complain or object at trial and now try to profit from his own acts. The record does not reveal the challenges were used to hide racial discrimination; the place for such determination is in the trial court, not on appeal.

## ISSUES RELATING TO FIRST STAGE EVIDENCE

■ Prior to trial appellant was examined to determine whether he was competent to stand trial. At trial, appellant offered the records of his competency evaluation conducted at Eastern State Hospital to support his defense of insanity. The State objected on the ground that competency and insanity are distinct issues and the records from Eastern State Hospital would be irrelevant to the issue of insanity. The trial court sustained the objection. Appellant seeks reversal claiming that the trial court's ruling prevented him from presenting evidence material to his only defense.

It is well settled that the question of an accused's present competency to stand trial is an entirely different matter than the defense of insanity. *See Miller v. State,* 751 P.2d 733 (Okl.Cr.1988). Nothing in the Eastern State Hospital records was directed to the question of sanity, which is whether appellant was capable of knowing the wrongfulness of his acts when he committed them. *See* 21 O.S.1981, § 152(4). Rather, the examination was directed solely to the question of competency, i.e., whether appellant had the ability at the time of trial to understand the nature of the charges and proceedings brought against him, and was able to effectively and rationally assist in his defense.

---

1. The prosecutor also stated that the black juror was worried about feeding her family, when in fact she was divorced and living alone. Although this could cast doubt upon the prosecutor's motives, we note that for some reason, defense counsel shared this erroneous impression. (Tr. Vol. II, p. 130) In light of the valid reasons expressed and the absence of objection, we find that the State was properly permitted to excuse her.

*See* 22 O.S.1981, § 1175.1. Appellant sought to introduce the records merely because they were authentic. Any probative value was substantially outweighed by the danger of misleading the jury and confusing the issues of competency and sanity, 12 O.S.1981, § 2403, and we find that the trial court ruled properly.

## ISSUES RELATING TO FIRST STAGE CLOSING ARGUMENT

■ Appellant claims that while discussing the evidence concerning the shooting of six-year-old Tameca Thomas, the prosecutor picked up the gun appellant had used, "slowly paraded in front of the jury, pretending to be Cyril Ellis," pointed the gun at the ground, and "dry-fired" it. Much of appellant's description of the prosecutor's actions can be viewed only as embellishment of the record. As to "dry-firing" the gun while pointing it down, a fact to which the State has stipulated, this is partially what appellant described in his taped statement to the police, which was played for the jury. The prosecutor did embellish the facts and was overly graphic but was within the bounds of closing argument. We find that the prosecutor's actions fell within the wide latitude permitted during closing argument. *See Cervantes v. State,* 556 P.2d 622, 627 (Okl.Cr. 1976). Appellant's analogy to the conduct of the prosecutor in *Brewer v. State,* 650 P.2d 54 (Okl.Cr.1982), is tenuous at best, and in any event, is unpersuasive in this case.

■ Appellant additionally claims that he was prejudiced by an emotional outburst from Tameca's relatives in the courtroom. The record shows that the trial court sent the jury out of the courtroom immediately, and the sobbing women were escorted out of the room by members of their family. The incident was of short duration and the trial court took appropriate measures to prevent any unfair prejudice. In his brief, appellant seems to argue that the trial court should have admonished the jury. However, we note that no admonishment was requested at trial. Appellant's failure to object is his

fault; this cannot be said to be fundamental error. Appellant has provided no authority requiring such action by the trial court *sua sponte.* It is appellant's burden to support his arguments with specific, relevant authority. *VanWoundenberg v. State,* 720 P.2d 328, 335 (Okl.Cr.1986), *cert. denied,* 479 U.S. 956, 107 S.Ct. 447, 93 L.Ed.2d 395 (1986).

Finally, while not condoning all of the prosecutor's statements, we can find no error warranting reversal or modification.

## ISSUES CONCERNING FIRST STAGE JURY INSTRUCTIONS

■ The trial court refused appellant's Requested Jury Instruction No. 12, which read in part:

> You are further instructed that under the facts of this case, the crime of murder as heretofore defined in these instruction, embraces the lesser degree of felonious homicide known as first degree manslaughter. In such cases, the statutes of this State define homicide as manslaughter in the first degree where the State has proved beyond a reasonable doubt the following: (1) the death of a human being; (2) without a planned and deliberate design to effect death; and (3) by means of a dangerous weapon.

The Instruction also provided for manslaughter committed while in the heat of passion.

■ Appellant relies upon *Smith v. State,* 652 P.2d 303 (Okl.Cr.1982), to show that the foregoing Instruction contains an accurate statement of the elements of manslaughter. However, we do not find that the evidence produced at trial supported this requested Instruction. Where there is no evidence to support a lesser included offense to the crime, it is not only unnecessary to instruct on it, but the trial court has no right to ask the jury to consider the issue. *Bennett v. State,* 743 P.2d 1096, 1098 (Okl.Cr.1987). Each of the homicide victims in this case were shot multiple times with at least one wound to the head. Appellant had to reload his weapon, a revolver, before each killing.

He prefaced the murder of Carl Lake with the statement, "I'm going to blow your f***ing head off." Regardless of whether appellant was capable of knowing the wrongfulness of his acts, we find that the evidence points only to a deliberate design to effect death. Appellant's requested Instruction was, therefore, properly refused.

Appellant further asserts that the insanity Instruction given in this case placed an impermissible burden of proof upon him. However, the Instruction given was similar to the one considered and approved by this Court in *Morris v. State*, 766 P.2d 1388, 1390 (Okl.Cr. 1988). This assignment of error is without merit.

■ Appellant finally asserts that the trial court erred by refusing to instruct the jury concerning the consequences of returning a verdict of not guilty by reason of insanity. We continue to adhere to our position that 22 O.S.Supp.1988, § 1161, "is merely a procedural statement of disposition subsequent to the verdict and is immaterial to the process of rendering a verdict concerning the sanity of the accused." *Thomsen v. State*, 582 P.2d 829, 832 (Okl.Cr.1978). *See also Boutwell v. State*, 659 P.2d 322 (Okl.Cr.1983).

Therefore, finding no error which warrants reversal, the finding of guilt as to Murder in the First Degree and four counts of Shooting with Intent to Kill is AFFIRMED.

## ISSUES RELATING TO SECOND STAGE EVIDENCE

Appellant complains that the trial court erred by permitting the State to present the testimony of Michael Deloney. The record shows that on the evening prior to the commencement of trial, defense counsel was called by the prosecutor and informed that Mr. Deloney would testify during the second stage and provided him with the substance of the expected testimony. Prior to trial, appellant sought a continuance, but this was not based upon Mr. Deloney's testimony, and Mr. Deloney's name was never mentioned. Appellant did not bring this problem to the trial court's attention until eight days after trial had commenced. On appeal, appellant claims that the State's failure to give notice two days prior to trial violated his rights under the Okla. Const. art. 2, § 20, and 21 O.S.1981, § 701.10. These grounds were not relied upon at trial. Nonetheless, the trial judge permitted defense counsel to interview Mr. Deloney in chambers prior to his testimony, and the record reflects that defense counsel cross-examined the witness effectively.

■ We agree with the argument of the Attorney General that art. 2, § 20, does not apply to evidence to be used in support of the State's Bill of Particulars. The relevant portion of this constitutional provision reads, "[I]n capital cases, [the defendant] shall be furnished with a list of the witnesses that will be called in chief, to prove the allegations of the Indictment or Information ..." (Emphasis added) We have previously recognized the distinction between a criminal Information and a Bill of Particulars in capital proceedings. For example, although a defendant is entitled to a preliminary hearing upon an amended Information, there is no such right with regard to a Bill of Particulars. *Newsted v. State*, 720 P.2d 734 (Okl.Cr.1986), *cert. denied* 479 U.S. 995, 107 S.Ct. 599, 93 L.Ed.2d 599 (1986). Under a plain reading of the language, the constitutional two-day requirement applies only to witnesses called to prove the allegations of the Indictment or Information, not the Bill of Particulars. This is similar to the same rule as it would relate to rebuttal witnesses and notice.

The Legislature, by enacting the notice requirement contained in 21 O.S.1981, § 701.-10, appears to have recognized this same distinction. Indeed, if the constitutional provision had application here, no purpose would be served by the sentence, "Only such evidence in aggravation as the State has made known to the defendant prior to trial shall be admissible." The Legislature is never presumed to have done a vain thing. *Farris v. Cannon*, 649 P.2d 529 (Okl.Cr.1982). In order to give effect to the language of the

statute, we must conclude that evidence in aggravation is to be treated separately from witnesses to prove the allegations of the Information.

The State did make the evidence in aggravation known to the defense prior to trial, and defense counsel was given an adequate opportunity to prepare for this evidence. Counsel could have made a timely objection on the day of trial, which he did not do, and cannot stay behind that well-known log and object eight (8) days later or on appeal. Accordingly, this assignment of error is without merit.

■ Appellant also complains of several photographs which were admitted during the second stage of trial depicting the victims at the crime scenes. Each of the pictures was excluded or withdrawn during the first stage of trial upon defense counsel's objection. In the second stage, however, the trial judge found that the pictures were very probative to show that the murders were especially heinous, atrocious, or cruel.

■ We find no abuse of discretion. In order to prove the aggravating circumstance of heinous, atrocious, or cruel, the State must prove that death was preceded by torture or serious physical abuse. *Stouffer v. State*, 742 P.2d 562, 563 (Okl.Cr.1987). Proof of serious physical abuse in this case was provided largely by forensic and blood spatter analysis. Although the pictures contained a great deal of blood, they were necessary to form a basis for the blood spatter analysis. The appellant caused the problem; the pictures were only graphics of the facts and the jury must see them and have the facts before them so as to make proper findings. We cannot say that the probative value of the photos was outweighed by the danger of unfair prejudice, 12 O.S.1981, § 2403, and this assignment of error is without merit.

The trial court refused to permit appellant to present evidence concerning parole practices. In light of our previous holdings, we find no error. *See Walker v. State*, 723 P.2d 273, 280 (Okl.Cr.1986).

■ Appellant also seeks reversal because the jury was exposed to the possibility of parole. The jury began second stage deliberations on November 4, 1986. An election held that day contained State Question 593, which asked the people of the State whether the Oklahoma Constitution should be amended to take away the power of the Pardon and Parole Board and the Governor to grant paroles to convicts sentenced to death or to life in the prison without parole. Defense counsel repeatedly approached the trial judge while the jury was deliberating, asking that some provision be made for the juror's right to vote. When the judge prepared an order to have the jury vote at the County election Board offices without breaking sequestration, defense counsel raised the problem of Question 593 being on the ballot. He moved for a mistrial, and in the alternative asked the trial court to instruct the jury that "life imprisonment means life." The trial court questioned defense counsel's ethics and overruled both motions.

We would first note that the jury was instructed "not [to] consider any matter of fact or law except such as have been given you in open court." The jurors were bound by oath not to consider extraneous information and there is no indication in the record that they failed to live up to their oath. Furthermore, if it was improper for the jury to vote while sequestered, any error was invited by the defense and cannot serve as a basis for reversal. *See Foster v. State*, 742 P.2d 1131, 1134 (Okl.Cr.1987). The defendant cannot invite error and then seek to profit from it.

## ISSUES RELATING TO SECOND STAGE JURY INSTRUCTIONS

■ In the first stage of trial, the jury was instructed:

> You should not let sympathy, sentiment, or prejudice enter into your deliberations, but should discharge your duties as jurors impartially, conscientiously, and faithfully under your oaths and return such verdict as the evidence warrants when measured by these Instructions.

After all of the second stage evidence had been submitted, the jury was further instructed that the first stage instructions still applied where appropriate and were to be considered together with the second stage instructions. Appellant claims that these instructions, when read together, unconstitutionally precluded the jury from considering sympathy as a mitigating factor.

This Court approved this instruction in *Fox v. State*, 779 P.2d at 562, 574 (Okl.Cr. 1989); further, the U.S. Supreme Court also has approved this instruction and found that its use was not error. *Saffle v. Parks*, 494 U.S. 484, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990).

■ The trial court refused appellant's requested Instruction which would have required the State to disprove beyond a reasonable doubt the existence of every mitigating circumstance. However, appellant offers no authority which would require the trial court to give such an Instruction. *See Van-Woundenberg v. State*, 720 P.2d at 335. Furthermore, we would point out that once the State has carried its statutory burden of proving beyond a reasonable doubt the existence of at least one aggravating circumstance, the sentencing determination properly lies in the hands of the jury. This is a balancing process, and the State has no burden to disprove any mitigating circumstances. Unless the jury finds that the aggravating circumstance(s) are outweighed by the mitigating circumstance(s), it is entitled under the statute to consider the death penalty. The trial court did not err by refusing to give the Instruction.

Appellant seeks reversal because the trial court refused to give his requested instruction that life may be imposed even if the aggravating circumstances were found to outweigh the mitigating circumstances. Appellant concedes that this Court has previously considered and rejected this argument. *See Irvin v. State*, 617 P.2d 588 (Okl.Cr. 1980). *See also Fox v. State*, 779 P.2d 562, 573 (Okl.Cr.1989). We are not persuaded to change our position.

On five occasions during the jury's deliberations, defense counsel requested that the trial judge give the final portion of OUJI–CR–442, informing the jury that if a unanimous verdict could not be reached, the jury would be discharged and a sentence of life imprisonment would be imposed. On the last three of these occasions, defense counsel also asked that the judge take the case from the jury. 21 O.S.Supp.1988, § 701.11. Each request was refused. On appeal, appellant seeks reversal of his death sentences because the jury was permitted to deliberate for over seventeen hours, and because the requested Instruction was never given.

■ We find that the length of the jury's deliberations was not unreasonable under the circumstances of this case. The jury was determining sentences on three counts of murder, and had to determine the existence of three aggravating circumstances in each count. Additionally, the jury was setting terms of incarceration on four counts of shooting with intent to kill. The jury was considering evidence presented in a trial that took more than a week, and included records from Eastern State Hospital which had been admitted during the second stage without any professional explanation. These records alone consisted of more than ninety pages, many of which were printed on both sides. Some of the material was type-written and single spaced, and some was handwritten and barely legible. The trial court noted that the jury had requested all of the exhibits admitted during trial, including first stage exhibits, and never expressed difficulty during deliberations. As the time for deliberations was not unreasonable, the trial court did not abuse its discretion by refusing to give the requested Instruction or take the case from the jury.

Appellant also asks this Court to resolve what he perceives as an inconsistency between *Johnson v. State*, 731 P.2d 993 (Okl. Cr.1987), and *Hayes v. State*, 738 P.2d 533 (Okl.Cr.1987). He claims that *Johnson* precludes giving the final portion of OUJI–CR–442, while *Hayes* prohibits its use only until

it is apparent the jury has exceeded a reasonable time for reaching a decision on punishment. Appellant has misread the language in *Johnson.* That opinion properly states that the language in 21 O.S.Supp.1988, § 701.11, is an instruction to the trial court. Also, the *Johnson* case involved a request for the instruction before any deliberations had taken place. We continue to adhere to the view that giving an Instruction such as the one requested in *Johnson* "would amount to an invitation to avoid the difficult duty of passing sentence upon the life of the accused." *Johnson,* 731 P.2d at 1005.

■ Whether the final portion of OUJI–CR–442 will be given remains a question directed to the sound discretion of the trial judge, who is in the best position to determine whether the additional instruction would be helpful to a final resolution of the case. Neither *Johnson* nor *Hayes* is in conflict with this view.

■ Appellant requested an instruction informing the jury that the State must prove beyond a reasonable doubt that the aggravating circumstances outweighed the mitigating circumstances. Appellant notes that we have rejected this argument before. *See Johnson v. State, supra,* and *Fox v. State,* 779 P.2d at 573. The United States Supreme Court also recognizes that no such Instruction is constitutionally required. *Zant v. Stephens,* 462 U.S. 862, 890, 103 S.Ct. 2733, 2749, 77 L.Ed.2d 235 (1983).

■ Appellant next challenges the use of the continuing threat circumstance, 21 O.S. 1981, § 701.12(7), in his case. Appellant is not challenging the validity of the statute, for in his brief, he recognizes that "on its face 'continuing threat' appears not to be vague." Rather, he claims that this Court is applying the circumstance in an overbroad, arbitrary, and capricious manner, and claims that his death sentence must be set aside because the trial court failed to narrow its application with additional instructions. We have squarely addressed and rejected these arguments. *VanWoundenberg v. State,* 720 P.2d

at 336–37. The evidence was clear that, without question, the defendant was a "continuing threat".

■ Appellant finally attacks the adequacy of the trial court's instructions on the aggravating circumstance of "especially heinous, atrocious, or cruel." 21 O.S.1981, § 701.12(4). As noted above, this circumstance may be applied only to those murders in which torture or serious physical abuse preceded death. *Stouffer v. State, supra.* The trial court in the present case failed to give an instruction which would so limit this circumstance. Accordingly, the jury's finding of this circumstance must fail.

## DEATH SENTENCE REVIEW

Pursuant to 21 O.S.Supp.1988, § 701.13(C), we are required to determine:

1. Whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor; and

2. Whether the evidence supports the jury's or judge's finding of a statutory aggravating circumstance as enumerated in Section 701.12 of this title.

As noted above, we have stricken the aggravating circumstance of heinous, atrocious or cruel due to insufficient instruction. However, the jury imposed sentences of death after finding two other aggravating circumstances in each murder. The other aggravating circumstances found were: (1) appellant knowingly created a great risk of death to more than one person, 21 O.S.1981, § 701.12(2); and (2) the existence of a probability that appellant would commit criminal acts of violence that would constitute a continuing threat to society, § 701.12(7).

■ The murders in this case took place at two crime scenes. At the first, appellant shot and killed Teresa Thomas. Then he turned his gun on Tameca Thomas, critically injuring her. At the second scene, appellant killed two men and shot two more intending to kill them. The evidence clearly supports

the jury's finding that appellant knowingly created a great risk of death to more than one person in all three cases.

Blood spatter analysis showed that Teresa Thomas was originally shot inside her house. The trail of blood led to the back door and into the back yard. Her dirty, blood stained pants showed that she had crawled along the back of the house attempting to escape appellant. In his taped statement, appellant described Ms. Thomas's pleading for her life. Bullet holes in the house showed that appellant continued to fire at her as she crawled.

Witnesses heard Carl Lake shout at appellant after he had been shot once. Appellant's statement revealed that he shot Mr. Lake once, and as Mr. Lake moved toward him, he fired a second time. Forensic and blood spatter analysis confirmed this testimony. When appellant entered Mr. Lake's office, Lake put up his hand in a defensive motion. Appellant fired a shot that grazed Lake's fingertip and passed across his face causing an entry wound in one cheek and an exit wound in the other. Mr. Lake went across the room, grabbed a box, slipped, and fell down in front of appellant. Appellant fired a second shot into the top of Lake's head, killing him instantly.

Jim Rider suffered four gunshot wounds. Two struck him in the front. One grazed his head and the other passed through abdominal tissue. Neither was fatal. A witness testified that Rider started up the stairs at that point, stumbled, and fell down. When Ellis walked past, he fired two more shots into Rider's back. One of these was fatal.

The State also presented evidence that appellant showed no remorse for the killings, that he had acted calmly and coolly in the commission of each crime, and that appellant said he had not killed all of the people he had meant to. After committing the murders, he called his place of employment and asked them, "How did you like that trick or treat I just gave you?" He also told his sister that he had been there taking care of "business." Other testimony showed that appellant had threatened to "take some metal to some

heads," and had struck fellow employees with fists and boards without any apparent provocation. He had physically assaulted his fiancee and a former girlfriend when problems in the relationships arose. We find that all of this evidence supports the jury's finding of a probability that appellant would commit criminal acts of violence that would constitute a continuing threat to society. *See Van-Woundenberg v. State,* 720 P.2d 328 (Okl.Cr. 1986), *cert. denied,* 479 U.S. 956, 107 S.Ct. 447, 93 L.Ed.2d 395 (1986).

We also can find no indication in the record that the jury imposed the sentences of death under the influence of passion, prejudice, or any other arbitrary factor.

Appellant seeks modification of his death sentences because they are excessive in light of his mental illness. The jury was presented evidence of whatever mental illness appellant may suffer and was instructed that a history of mental illness or impairment at the time of the crime due to mental illness could be considered as mitigating circumstances. The existence and weight of these circumstances was properly left in the hands of the jury.

Finally, appellant claims that this Court violates his constitutional right to due process by re-weighing the aggravating and mitigating circumstances in his case after one aggravating circumstance has been found invalid. However, in *Stouffer v. State,* 742 P.2d 562, 564 (Okl.Cr.1987), this Court held that an independent reweighing of aggravating and mitigating circumstances is implicit to our statutory duty to determine the factual substantial of the verdict and the validity of the death sentence. *See also Castro v. State,* 749 P.2d 1146 (Okl.Cr.1988) (Opinion on Rehearing); and *Sellers v. State,* 809 P.2d 676, 691 (Okl.Cr.1991). After discarding the evidence supporting the invalid aggravating circumstance of "especially heinous, atrocious or cruel," and after carefully weighing the remaining aggravating circumstances against the mitigating evidence presented at trial, we find the sentences of death to be factually

substantiated and appropriate, and they are hereby AFFIRMED.

■ On November 7, 1990, appellate counsel filed in this Court a Motion for New Trial Based on Newly Discovered Evidence. Appellate counsel avers that shortly before oral argument of this case, held on March 27, 1990, the appellant notified her that he had undergone a psychological examination on January 7, 1986, nineteen days before the appellant committed the crimes. The test, a Minnesota Multi–Phasic Personality Inventory (MMPI), was taken in conjunction with a 1984 workers' compensation claim for an injury to appellant's foot. Appellate counsel claims that a psychologist who has reviewed the test has informed her that the results show appellant was paranoid schizophrenic. Appellate counsel surmises that appellant was apparently incompetent to remember having taken the test, but argues that as his defense at trial was insanity, a psychological examination performed so closely in time to the commission of the crimes is of utmost relevance and demands a new trial, or in the alternative, an evidentiary hearing.

■ The test for whether a motion for a new trial should be granted based upon newly discovered evidence is: (1) whether the evidence is material; (2) whether the evidence could not have been discovered before trial with reasonable diligence; (3) whether the evidence is cumulative; and (4) whether the evidence creates a reasonable probability that, had it been introduced at trial, it would have changed the outcome. *Sheppard v. State*, 731 P.2d 989, 990 (Okl.Cr.1987). For the following reasons, we do not find that appellant has satisfied this test.

Initially, the record reveals that defense counsel was aware of appellant's prior foot injury at trial. (Vol. III, p. 133). We are of the opinion that the MMPI test could have been discovered by trial counsel prior to trial in the exercise of due diligence. We find support in the fact that trial counsel diligently pursued another worker's compensation claim of appellant concerning a head injury

he suffered while at work. Throughout the trial, both during cross-examination of the State's witnesses and direct examination of his own witnesses, defense counsel stressed the fact that appellant had suffered a head injury.

We are further convinced, beyond a reasonable doubt, that even had this evidence been introduced at trial, the outcome of the trial would not have changed. Defense counsel presented various witnesses who testified that prior to the crimes, appellant had suffered various mental problems, had uttered strange things, had heard voices talking to him, had demonstrated peculiar and erratic behavior, had attempted suicide and had checked himself into the psychiatric wing of St. Anthony's Hospital. It is evident that the jury heard considerable evidence concerning appellant's mental problems.

We find that appellant's motion for a new trial or in the alternative, an evidentiary hearing, should be and hereby is, DENIED.

LANE, P.J., concurs.

LUMPKIN, V.P.J., and BRETT and PARKS, JJ., specially concur.

LUMPKIN, Vice–Presiding Judge: specially concurs.

I concur in the Court's decision to affirm each of the judgments and sentences in this case. However, the Court summarily disregards the scope of its authority on appellate review in determining that the especially heinous, atrocious or cruel aggravating circumstance must fail. While the instruction limiting the application of this aggravator to murders involving torture or serious physical abuse was not given, neither the federal or state constitutions nor the statutory grant of authority to this Court for appellate review preclude the review of the evidence to determine if the aggravating circumstance is supported by the record.

This Court is not precluded from considering whether the evidence presented at trial supports this circumstance under a narrowed

construction. Although the Supreme Court found that the circumstance was not adequately narrowed in *Maynard v. Cartwright,* 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988), aff'g *Cartwright v. Maynard,* 822 F.2d 1477 (10th Cir.1987); nothing indicates that an appellate court cannot narrow the circumstance on review. Rather, the Supreme Court has indicated just the opposite. *See Maynard v. Cartwright,* 486 U.S. at 363, 108 S.Ct. at 1859, 100 L.Ed.2d at 374. The Tenth Circuit considered adopting a permissible construction to apply for the purposes of federal *habeas corpus* review. *Cartwright v. Maynard,* 822 F.2d at 1491. It declined to do so because "[t]hat determination must be made by the state in the first instance as it construes its own laws in light of constitutional requirements." *Id.* at 1492.

This view is also supported by *Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976). There, the Supreme Court found that the Florida Supreme Court's narrowing construction of this circumstance provided adequate guidance "to those charged with the duty of recommending or imposing sentence in capital cases." 428 U.S. at 256, 96 S.Ct. 2960. In footnote 12 of that opinion, the Court went further to indicate that if the facts of the crime could accurately be characterized as falling within the permissible construction, then the finding of the circumstance may be upheld even though the narrowing language was not specifically used. *Id.* at 255, n. 12, 96 S.Ct. at 2968 n. 12. As the uncontroverted evidence shows, it is clear that appellant's acts may be characterized accurately as especially heinous, atrocious, or cruel under the narrowing construction adopted in *Stouffer v. State,* 742 P.2d 562 (Okl.Cr.1987). In substance, there is no distinction between reweighing evidence regarding remaining aggravators after striking an invalid aggravating circumstance and reweighing the evidence pursuant to the narrowed construction. I would therefore affirm the heinous, atrocious, or cruel aggrava-

ting circumstance because torture or serious physical abuse was clearly proven by the evidence.

BRETT, Judge, specially concurring:

I concur with the majority opinion. However, I wish to address the issue of whether the prosecutor exercised his peremptory challenges to remove minorities in an unconstitutionally discriminatory manner. The United States Supreme Court has recently revisited this issue in *Powers v. Ohio,* 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). Now, "a criminal defendant may object to race-based exclusions of jurors effected through peremptory challenges whether or not the defendant and the excluded juror share the same race." *Powers,* 499 U.S. at ——, 111 S.Ct. at 1366, 113 L.Ed.2d at 419. "Although a defendant has no right to a 'petit jury composed in whole or in part of persons of [the defendant's own race,' [citation omitted] he or she does have the right to be tried by a jury whose members are selected by nondiscriminatory criteria." *Id.,* 499 U.S. at ——, 111 S.Ct. at 1367, 113 L.Ed.2d at 421.

Although a defendant need not demonstrate membership in a cognizable racial group, the two-prong test of *Batson* is still applicable. In order to establish a prima facie case of discrimination under *Batson,* a defendant must 1) demonstrate that the State exercised a peremptory challenge to remove a venireperson from a cognizable racial group, and 2) demonstrate that the State removed that venireperson solely on the basis of their race.

PARKS, Judge, specially concurring:

I concur with the majority that the jury's finding of the "especially heinous, atrocious or cruel" aggravating circumstance is invalid due to incomplete instructions.[1] I also agree with the analysis concerning the reweighing of the remaining valid aggravating circum-

---

**1.** Notwithstanding, it continues to be the opinion of this writer that said circumstance is unconstitutionally vague both on its face and as applied. *See Foster v. State,* 779 P.2d 591, 594 (Okl.Cr.

1989) (Parks, P.J., specially concurring). However, as a matter of *stare decisis,* I yield to the "torture or serious physical abuse" standard adopted in *Stouffer.*

stances against the mitigating circumstances and the resulting affirmance of appellant's death sentences. However, I write separately to address the following.

Initially, I wish to reiterate my disagreement with the holding in *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Rather, I endorse Chief Justice Burger's dissenting opinion wherein he opined that counsel should not be forced to explain peremptory challenges. *Id.* 476 U.S. at 117–126, 106 S.Ct. at 1734–39. *See Manuel v. State,* 751 P.2d 764, 765–6 (Okl.Cr.1988) (Parks, J., specially concurring). However, as I am bound to apply the *Batson* rule, I concur with the majority's disposition of this issue.

Furthermore, for the reasons stated in my separate opinion in *Fox v. State,* 779 P.2d 562, 579 (Okl.Cr.1989), I continue to view the so-called "anti-sympathy" instruction in the second stage unnecessary and confusing to the jury where mitigating evidence has been introduced. And, while this writer is "not presently prepared to abandon my opinion regarding the validity of the 'continuing threat' circumstance, I agree with appellant that more definitive guidance is needed." *Boltz v. State,* 806 P.2d 1117, 1126 (Okl.Cr. 1991) (Parks, P.J., specially concurring). As a matter of *stare decisis,* however, I must yield to the majority view regarding these issues.

## OPINION ON REHEARING

JOHNSON, Vice Presiding Judge:

Appellant, Cyril Wayne Ellis, was convicted in the District Court of Oklahoma County, Case No. CRF–86–651, on three counts of Murder in the First Degree and four counts of Shooting With Intent to Kill. Punishment was set at death for each count of murder and 2,000 years, 3,000 years, 1,000 years and 1,000 years for the four counts of Shooting With Intent to Kill. We affirmed the convictions and sentences in *Ellis v. State,* at 1293. Appellant has now filed a Petition for Rehearing pursuant to 22 O.S.1991, Ch. 18 App.,

Rules of the Court of Criminal Appeals, Rule 3.14(B).

Appellant raises approximately ten allegations of error in his petition. Rule 3.14(B) specifically provides:

A petition for rehearing shall not be filed, as a matter of course, but only for the following reasons:

(1) That some question decisive of the case and duly submitted by the attorney of record has been overlooked by the Court, or

(2) That the decision is in conflict with an express statute or controlling decision to which the attention of this Court was not called either in the brief or in oral argument.

After fully considering the petition filed herein, we find that appellant's first, third, sixth and seventh allegations of error are the only issues raised that are appropriate for rehearing. Therefore, we will limit our review to these issues alone.

In his first proposition of error, appellant asserts that this Court improperly overlooked Proposition XXIII which alleges that the State improperly made false and misleading statements during closing arguments. On June 1, 1992, barely two months prior to the opinion in this case being handed down, appellant filed a Motion to Supplement Record and Brief. Therein, appellant requested that this Court permit him to file a Supplemental Brief which added Proposition XXIII to his brief-in-chief. For unknown reasons this motion was not brought to the Court's attention until after the opinion on direct appeal was handed down. While it is *very* doubtful that appellant's motion would have been granted at the time it was filed, considering the circumstances this Court now feels compelled to address Proposition XXIII on rehearing.

The allegedly improper comments occurred during closing arguments following the conclusion of evidence in the penalty phase. Specifically, appellant contends Dis-

trict Attorney Macy incorrectly stated that the appellant voluntarily committed himself to St. Anthony's Hospital and that no doctor recommended that he be committed. In addition, appellant submits that Assistant District Attorney Foley misrepresented facts when he said that appellant was not on any medication except occasional insomnia medication. Appellant maintains these comments denied him a fair trial and reliable sentencing hearing.

We review for fundamental error only as defense counsel failed to object to either of these comments when they were made at trial. *Trim v. State*, 808 P.2d 697, 699–700 (Okl.Cr.1991). While these comments may not have been entirely accurate, the misstatements were not so egregious as to amount to fundamental error that would require reversal or modification of appellant's convictions and sentences. *Langley v. State*, 813 P.2d 526, 531 (Okl.Cr.1991). The jury had already rejected the appellant's insanity claim by finding him guilty in the first stage of trial. Furthermore, after reviewing the totality of the evidence, we fail to see how these minor misstatements of fact could have affected the outcome of the sentencing hearing. *See Mornes v. State*, 755 P.2d 91, 94 (Okl.Cr. 1988). Therefore, we find the comments did not deprive appellant of a fair trial.

In his third proposition of error, appellant claims the Court's opinion regarding the necessity for an admonishment is in conflict with prior decisions of this Court. On appeal, appellant submitted the trial court erred by not declaring a mistrial following an emotional outburst in the courtroom. We found no error holding that "[t]he incident was of short duration and the trial court took appropriate measures to prevent any unfair prejudice." The Court further noted that "no admonishment was requested at trial" and that no fundamental error occurred. Appellant now complains that the Court's language that no admonishment was requested is in conflict with *Kelsey v. State*, 744 P.2d 190, 192 (Okl.Cr.1987).

In *Kelsey*, this Court overruled prior cases to the extent that they required a request for an admonishment, in addition to a timely specific objection, in order to preserve the record for appellate review. Preserving error for appellate review and curing alleged trial court error are two very different matters. This Court did not find that appellant failed to properly preserve the record for appellate review. The Court's decision was based upon the finding that the trial court's actions sufficiently prevented any unfair prejudice. Consequently, further curative action was not necessary. As the Court's finding was not in conflict with prior decisions of this Court, this proposition of error is without merit.

■ In his sixth assignment of error, appellant maintains the Court's finding that no error occurred by the late endorsement of Michael Deloney is in conflict with controlling decisions to which this Court's attention was not called. Appellant specifically refers this Court to *Thomas v. State*, 811 P.2d 1337 (Okl.Cr.1991), *Williamson v. State*, 812 P.2d 384, 408 (Okl.Cr.1991) and *Hunter v. State*, 829 P.2d 64 (Okl.Cr.1992). We have thoroughly reviewed these cases and find they are not controlling on this issue. Appellant was clearly notified prior to trial of the evidence to be offered in aggravation, and defense counsel was given a sufficient opportunity to prepare. Therefore, relief is not required.

■ Finally, in his seventh assignment of error, appellant asserts this Court did not conduct a proper reweighing of the aggravating and mitigating factors as required by *Clemons v. Mississippi*, 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990). As a result, appellant maintains he was improperly deprived of his right to an individualized sentencing determination.

When reweighing, this Court must review the aggravating and mitigating evidence to ascertain the role which the invalid "heinous, atrocious or cruel" aggravator played in the jury sentencing process. *Stringer v. Black*, 503 U.S. ——, ——, 112 S.Ct. 1130, 1136, 117 L.Ed.2d 367 (1992). The Court must then

determine, through the reweighing process, what the jury in this case would have decided had it not considered the invalid aggravator. *Stringer*, 503 U.S. at ——, 112 S.Ct. at 1137; *Richmond v. Lewis*, 506 U.S. ——, ——, 113 S.Ct. 528, 535, 121 L.Ed.2d 411 (1992). In the Court's original majority opinion, this Court provided a very thorough analysis of the evidence offered in support of each of the aggravating circumstances and found it to be sufficient. However, upon review, we find that a more thorough account of the mitigating evidence considered in the reweighing process is needed.

The arguably mitigating evidence presented during the proceedings basically consisted of the following:

1. Appellant's brother and sister love him and would visit and communicate with him in the penitentiary;

2. Friends and a former teacher of appellant's found him to be very special and were concerned for his future;

3. Appellant was a very active member of the Garden of Prayer Church of God and Christ and was the Assistant Sunday School Superintendent and a young Minister;

4. Appellant helped save Ms. Jennifer Champ from drowning when her car slid into Reno Creek;

5. Appellant was a volunteer at the Oklahoma County Juvenile Bureau and spent time talking with children;

6. Appellant has a history of mental illness;

7. Appellant had discussed his mental problems and desire to destroy himself with his church;

8. Just prior to the commission of the crimes, appellant attempted to commit suicide. After his suicide attempt, he was admitted into the psychiatric ward at St. Anthony's Hospital;

9. At the time of the murder, the appellant's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was impaired as a result of mental illness;

10. Appellant had no prior felony convictions;

11. Appellant showed remorse for the shootings when he was questioned by Detective Sellers.[1]

Furthermore, Instruction No. 17 specifically referred the jury to a minimum of eleven possible mitigating circumstances (O.R. 149). In addition to the list provided above, Instruction No. 17 included two additional possible mitigators for the jury to consider: the appellant's conduct during the course of the trial; and appellant's performance at Rose State College.

Upon carefully considering and reviewing the evidence which supports the two valid aggravating circumstances, as was set forward in the Court's original opinion, as well as the evidence which may be considered mitigating, this Court finds the sentences of death were factually substantiated and appropriate. While we do not take lightly the mitigating evidence presented, it is clear that the jury's improper consideration of the unconstitutional aggravator did not play a significant role in its decision to sentence appellant to death as the evidence supporting the two valid aggravators was concrete and substantial. We therefore again find that appellant's death sentences should be **AFFIRMED.**

On the basis of the foregoing, this Court finds that appellant's request for relief should be, and the same is hereby DENIED. The Clerk of this Court is ordered to issue the mandate forthwith.

LUMPKIN, P.J., specially concurs.

STRUBHAR, J., concurs.

LANE and CHAPEL, JJ., not participating.

---

1. This Court notes that this is not necessarily an all encompassing list of the mitigating evidence presented at trial and considered by this Court when reweighing. Rather, the list merely highlights the majority of the evidence offered in mitigation.

LUMPKIN, Presiding Judge, specially concurs:

I concur in the Court's opinion; however I write separately to emphasize two points.

First, the opinion reluctantly addresses Proposition XXIII, which was added in a supplemental brief filed on June 1, 1992, barely two months before this Court's opinion of his direct appeal was handed down. The record does not show the request to file a supplemental opinion was ever granted. Therefore, it is not properly before this Court. In any event, a supplemental brief is "intended to be limited to supplementation of recent authority bearing on the issues raised in the brief in chief, or on issues specifically directed to be briefed as ordered by this Court." *Castro v. State,* 745 P.2d 394, 404 (Okl.Cr.1987), *cert. denied,* 485 U.S. 971, 108 S.Ct. 1248, 99 L.Ed.2d 446 (1988) (quoting Rule 3.4(F), *Rules of the Court of Criminal Appeals,* 22 O.S.1991, Ch. 18, App.). *See also* Rule 9.3(D) (supplemental brief "shall only supplement authorities cited in the previous briefs"). Consequently, the proposition is not properly before the Court, and this Court should not address it.

Second, while this Court has specifically listed the mitigating evidence presented by Appellant at trial, I write separately to list more specifically the evidence in aggravation against Appellant. This Court struck down the aggravating circumstance that the murders were heinous, atrocious or cruel; but let stand two remaining aggravating circumstances: Appellant knowingly created a great risk of death to more than one person; and the existence of a probability Appellant could commit criminal acts of violence that could constitute a continuing threat to society.

Appellant left a blood bath in his wake, killing one victim at one location while killing two more at another location. At the first location, he killed Teresa Thomas; then shot Tameca Thomas, critically injuring her. Before that, he forced one man, Robert Dumas, into the trunk of a car; he then later opened the trunk, said "I see you don't want to live," and shot Dumas twice because Dumas was attempting to call for help. At the second scene, where Appellant worked, he shot and killed Carl Lake and James Rider. He also encountered Gordon Moore, whom he shot in the face after ordering Moore to kneel down on the ground. As Appellant left, he fired at a group of men who ran out into the parking lot; stopped to reload; then fired again before driving away. During that exchange he shot Ancil Davis. This evidence strongly supports the jury's finding Appellant knowingly created a great risk of death to more than one person.

In addition to the above evidence, Appellant's own statement to police and other evidence shows he first shot Teresa Thomas inside the house and continued to shoot her as she crawled outside, begging for her life. Evidence also showed Appellant acted calmly and coolly during each murder, and did not kill every one he intended to kill. After he left his place of employment, he called back and asked them how they enjoyed "that trick or treat I just gave you." Appellant had previously threatened to "take some metal to some heads"; had struck fellow employees without any apparent provocation; and had physically assaulted his fiancee and a former girlfriend when problems arose in those relationships. This amply supports the jury's finding Appellant would probably commit future acts of violence making him a continuing threat to society.

All this evidence, when taken together, more than outweighs the mitigating circumstances the jury considered.

Accordingly, I concur.